**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William John BAUER, Defendant–Appellant.**

No. 93–1165.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1993.

Decided March 18, 1994.

Counsel who presented argument on behalf of the appellant was Pamela A. Wilk, Philadelphia, PA. Additional attorneys appearing on the brief were Peter Goldberger, James H. Feldman, Jr. and Alan Ellis.

Counsel who presented argument on behalf of the appellee was Nathan P. Petterson, Minneapolis, MN.

Before RICHARD S. ARNOLD, Chief Judge, CAMPBELL,* Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

William John Bauer pleaded guilty to cocaine distribution offenses. The presentence report (PSR) charged him with conspiring to distribute forty kilograms of cocaine found hidden in his brother's car after they were arrested. Bauer objected, contending that his reasonably foreseeable involvement in the conspiracy was limited to the two kilograms he had agreed to distribute. After an evidentiary hearing, the district court[1] found that Bauer had conspired to distribute more than fifteen kilograms of cocaine and sentenced him to 170 months in prison plus a $2,500,000 fine. Bauer appeals this sentence. We vacate only the fine and remand.

## I. The Prison Term—A Foreseeable Drug Quantity Issue.

■ On July 7, 1992, Bauer and his brother James were suspected of drug trafficking. Surveilling agents saw the Bauers leave a garage that James had rented from his cousin, a confidential informant, to store drugs. After the brothers drove away in Bauer's rented car, agents went in the garage and viewed the videotape from a hidden motion-sensitive camera. The tape showed James removing two one-kilogram packages of cocaine from a hidden compartment in his car. Bauer picked up the two packages and took them to another part of the garage, where the cocaine was weighed and repackaged before the brothers departed.

The agents arrested the Bauers a short time after viewing the tape. When arrested, Bauer had 2.6 grams of cocaine, $1,000 cash, and a pager in his possession; his rental car yielded one-quarter kilogram of cocaine, $5,000 cash, and wrapping paper from at least two one-kilogram packages. Bauer admitted selling one kilogram of cocaine after leaving the garage but before his arrest. The agents then searched the informant's garage, where they found electronic scales, cocaine packaging materials, and James's car. A search of the car uncovered forty kilograms of cocaine in the hidden compartment from which James had earlier removed the cocaine that Bauer admitted agreeing to distribute. The principal issue at sentencing was whether Bauer's relevant conduct for sentencing purposes should include these additional forty kilograms.

At the sentencing hearing, Bauer testified that he had been a drug dealer in the 1970's but quit the business in 1981. In June 1992, James visited Bauer's home in San Francisco and asked him to help sell two kilograms of cocaine while attending a family reunion in Minneapolis. Bauer agreed and James left for Los Angeles. When the brothers reunited in Minneapolis on July 7, James revealed for the first time that he had picked up a total of forty-two kilograms in Los Angeles and had been unable to deliver the other forty kilograms to his contacts in Pennsylvania. Based upon this testimony, Bauer argued that, for conspiracy sentencing purposes, the forty kilograms were not "reasonably foreseeable acts ... of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

The district court rejected Bauer's testimony as "wholly incredible." It found that the government had proved "well beyond a simple preponderance of the evidence" that Bauer conspired to possess and distribute in excess of fifteen kilograms of cocaine. This quantity determination resulted in a base offense level of 34, see U.S.S.G. § 2D1.1(c)(5), and a Guidelines sentencing range of 151 to 188 months in prison.

On appeal, Bauer argues that the district court's quantity determination is erroneous as a matter of law. Bauer concedes that he knew before picking up the two kilograms of cocaine that James had forty-two kilograms in his possession. Bauer also concedes, as he must, that we will not overturn the district court's finding that Bauer's testimony was not credible. Nevertheless, Bauer argues, the government failed to prove that the addi-

---

* The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit, sitting by designation.

1. The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota.

tional forty kilograms were part of his "jointly undertaken criminal activity," and therefore the sentencing record does not support the district court's conclusion that Bauer knowingly and intentionally entered into a conspiracy to possess and distribute in excess of fifteen kilograms of cocaine. We disagree.

The sentencing record included the following evidence supporting the district court's quantity determination: (i) the July 7 videotape showing James and Bauer taking two kilograms of cocaine from the forty-two-kilogram stash; (ii) taped conversations with James and another brother, Loren Bauer, in which both stated that Bauer's approval was needed before the confidential informant could become a courier for the conspirators; (iii) the seizure of drug notes from a convicted drug dealer that referenced both James and Bauer; and (iv) Bauer's admission that he was a long-time drug dealer, combined with expert testimony that one could not quickly distribute two kilograms of cocaine in Minneapolis after being out of the business more than ten years. We agree with the district court that this evidence, combined with its finding that Bauer's testimony was wholly incredible,[2] was more than sufficient to justify the finding that Bauer was a long-term cocaine dealer who had conspired to possess and distribute more than 15 kilograms of cocaine. Thus, the district court's quantity determination was not clearly erroneous. *Compare United States v. Ortiz–Martinez*, 1 F.3d 662, 675 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 355, 126 L.Ed.2d 319 (1993); *United States v. Adipietro*, 983 F.2d 1468, 1476–77 (8th Cir.1993).

## II. The Fine.

■ In addition to sentencing Bauer to 170 months in prison, the district court imposed a $2,500,000 fine, explaining:

Finally, I tell you, sir, that this Court finds it appropriate to impose a dollar fine of two and a half million dollars. And that sum is a committed[3] fine, and where and when the United States finds your assets or if the United States has an opportunity to seize them either within or beyond the borders of this country, they may seize those in satisfaction of that, and that will be ordered.

The court's Judgment provides that the committed fine is payable in full immediately, but that any interest requirement, *see* 18 U.S.C. § 3612(f), is waived because "[t]he court has determined that the defendant does not have the ability to pay interest."

■ The district court erred in imposing a committed fine because "the Guidelines do not provide for committed fines." *Lincoln v. United States*, 12 F.3d 132, 133 (8th Cir. 1993).[4] In addition, Bauer argues that we must vacate the fine because the district court failed to make the findings required by U.S.S.G. § 5E1.2 and our decisions in *United States v. Walker*, 900 F.2d 1201, 1207 (8th Cir.1990); *United States v. Cammisano*, 917 F.2d 1057, 1064 (8th Cir.1990); and *United States v. Granados*, 962 F.2d 767, 773–74 (8th Cir.1992). The Guidelines provide that, in determining the amount of a fine, the court "shall consider," among other factors, the defendant's ability to pay "in light of his earning capacity and financial resources," and "the burden that the fine places on the defendant and his dependents relative to al-

---

**2.** When a defendant takes the stand "and denies the charges and the jury thinks he's a liar, this becomes evidence of guilt to add to the other evidence." *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir.1991), affirmed, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). *See also United States v. Friedman*, 998 F.2d 53, 57 (2d Cir.1993).

**3.** "A 'committed fine' is one where the judgment of conviction directs imprisonment until the fine or penalty imposed is paid." *Cohen v. United States*, 82 S.Ct. 526, 528 n. 2, 7 L.Ed.2d 518 (Douglas, J., 1962).

**4.** Committed fines were expressly authorized under former 18 U.S.C. § 3565 (1982). The legisla-

tive path of § 3565's repeal is difficult to track. First, § 238(g)(1) of the Sentencing Reform Act (SRA) repealed § 3565 effective November 1, 1987. *See* Pub.L. No. 98–473, § 238(g)(1), 98 Stat. 2039; *United States v. Atlantic Disposal Serv., Inc.*, 887 F.2d 1208, 1210 (3d Cir.1989). But Congress also provided that § 238 of the SRA would repeal itself. *See* Pub.L. No. 98–473, § 238(i), 98 Stat. 2039. However, the same Congress repealed the repealer in § 12(a)(9) of the Criminal Fine Enforcement Act, Pub.L. No. 98–596, 98 Stat. 3140. The net effect is that § 238 of the SRA took effect on November 1, 1987, and repealed § 3565 as of that date.

ternative punishments." § 5E1.2(d)(2), (3). Bauer correctly notes that the district court did not expressly find that he had the ability to pay a $2,500,000 fine—indeed, the court's decision to waive the statutory interest requirement suggests a contrary finding—nor did the court explain how it took this and the other § 5E1.2 factors into account in determining the amount of the fine.

■ An initial question is whether this issue was properly preserved. A "claim concerning the imposition of [a] fine, which was not presented to the district court and was raised for the first time on appeal in [a] reply brief, is not properly before the court." *United States v. Chippas*, 942 F.2d 498, 500 (8th Cir.1991). In this case, Bauer specifically objected to the "Financial Situation" portions of his PSR, and he testified at the sentencing hearing that the PSR inflated his net worth. Although he also should have objected specifically to the district court's imposition of the fine, and to the court's failure to make supporting findings under § 5E1.2, we conclude that Bauer adequately preserved the issue for appeal.

Turning to the merits of this issue, the government presented evidence at sentencing that Bauer made capital expenditures of $1,044,000 between 1981 and 1991, a period in which the total adjusted gross income on his tax returns was $304,756. There was evidence that Bauer traveled extensively abroad, maintaining drug contacts in Colombia and financial accounts with European institutions. Bauer admitted saving $500,000 from his drug trafficking by 1980, which he placed in Cromwellian Ltd., a shell corporation registered in the Isle of Man. He also admitted purchasing real estate in Argentina,

Florida, and Minnesota. Bauer vigorously disputed the government's portrayal of his present net worth, but his testimony shed little light on his true financial condition. The district court was entitled to conclude, and no doubt did conclude, that Bauer warranted a larger fine because he has failed to disclose his financial condition. *See* § 5E1.2, comment. (n. 6).

The sentencing record in this case was clearly sufficient to warrant imposition of a relatively substantial fine.[5] We have frequently upheld such fines based upon quite general § 5E1.2 findings.[6] The problem in this case is the sheer magnitude of the $2,500,000 fine when compared to Bauer's known assets, the lengthy prison term he now faces, and the financial needs of his wife and child. To be sure, there are important countervailing factors that may warrant a fine well in excess of Bauer's apparent ability to pay—the duration, magnitude, and profitability of his drug offenses; his many years of high living at the expense of the victims of drug trafficking; and his attempts to conceal the largesse from his criminal activities. *See* § 5E1.2(d)(1). The careful balancing of these conflicting factors is of course the essential task of the district court. Because the record does not reflect how the district court performed that task in imposing Bauer's large fine, we are unable to provide meaningful appellate review. Therefore, we conclude that we must vacate Bauer's fine and remand for redetermination of this portion of Bauer's sentence.

### III. Other Sentencing Issues.

*A. Recusal.* After Senior District Judge Harry H. MacLaughlin accepted Bauer's

---

5. We note in this regard that the Criminal Fine Enforcement Act was intended "to make criminal fines more severe and thereby encourage their more frequent use." H.R.Rep. No. 98–906, 98th Cong., 2d Sess. 1, *reprinted in* 1984 U.S.C.C.A.N. 5433, 5433.

6. *See Lincoln v. United States*, 12 F.3d 132, 133 (8th Cir.1994) ("six-figure net worth" justified $10,000 fine); *United States v. Miller*, 995 F.2d 865, 869 (8th Cir.) ("large profits which remained unaccounted" justified $100,000 and $200,000 fines despite assertion "they currently had only a few thousand dollars in assets"), *cert. denied*, — U.S. —, 114 S.Ct. 618, 126 L.Ed.2d

583 (1993); *United States v. Turner*, 975 F.2d 490, 498 (8th Cir.1992) ($25,000 minimum statutory fine upheld because defendant will likely earn that amount in prison), *cert. denied*, — U.S. —, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993); *United States v. Johnston*, 973 F.2d 611, 615 (8th Cir.1992) ($6,000 fine upheld because defendant can earn that amount in prison and after release), *cert. denied*, — U.S. —, 113 S.Ct. 1019, 122 L.Ed.2d 165 (1993); *United States v. Allen*, 886 F.2d 143, 146 (8th Cir.1989) ($10,000 fine upheld because defendant falsely reported a negative net worth).

guilty plea, Judge Rosenbaum presided over the sentencing. At the outset of that proceeding, Judge Rosenbaum confirmed that neither party objected to his presiding. Bauer nonetheless argues on appeal that Judge Rosenbaum should have recused himself under 28 U.S.C. § 455 because he served as United States Attorney for the District of Minnesota from 1981 to 1985 and because Bauer "was the subject of ongoing criminal investigations in Minnesota during the 1970's and early 1980's."

■ This Court has held that claims under § 455 "will not be considered unless timely made." *Holloway v. United States*, 960 F.2d 1348, 1355 (8th Cir.1992). *See Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1414 (8th Cir.1983). Bauer argues that he has good cause for failing to raise this issue in the district court because his out-of-state attorney at the sentencing hearing was unfamiliar with Judge Rosenbaum's background. We reject this contention; Bauer was at all times represented by local counsel in the district court.

■ Bauer's § 455 claim also fails on the merits. Bauer concedes that the investigation leading to this indictment began in 1991, long after Judge Rosenbaum took the bench. "If an indictment or investigation *leading directly* to the indictment began after a former prosecutor took office as a judge, he or she is not considered to have been 'of counsel' and is not required by § 455 to disqualify himself or herself." *United States v. DeLuna*, 763 F.2d 897, 908 (8th Cir.) (emphasis added), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). Bauer offers no evidence that any earlier investigation was significant to this proceeding or was actively pursued while Judge Rosenbaum was United States Attorney.

Judge Rosenbaum had no duty to recuse himself from this sentencing. Bauer's contrary assertion is frivolous.

*B. Ineffective Assistance of Counsel.* At the end of the lengthy sentencing hearing, the district court invited Bauer's counsel to comment before the court imposed sentence. Counsel urged that Bauer be incarcerated at the Federal Medical Center in Rochester, Minnesota, due to his health problems, and stated that his client wished to be heard. Bauer then told the court about his love for his young daughter and expressed regret that the district court had misunderstood and disbelieved his testimony.

■ Bauer argues on appeal that he was denied effective assistance of counsel because his attorney failed to plead for leniency on the grounds of Bauer's age, family circumstances, health problems, and inability to pay a large fine. This contention is without merit. Bauer's age was disclosed in the PSR. The court itself expressed concern about Bauer's wife and young daughter before it pronounced sentence. Both Bauer's health and his purported inability to pay a large fine were brought out during the sentencing hearing. Bauer was aggressively and effectively represented throughout the sentencing proceeding. Counsel's performance was not deficient and Bauer suffered no prejudice when counsel failed to urge at allocution facts and circumstances already well known to the sentencing court. *Compare United States v. Villasenor*, 977 F.2d 331, 337–38 (7th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1340, 122 L.Ed.2d 723 (1993).

■ *C. A § 3553(c)(1) Issue.* Bauer complains that the district court sentenced him to 170 months in prison without specifically explaining "the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1). We have urged sentencing courts "to refer to the facts of each case and explain why they choose a particular point in the sentencing range." *United States v. Dumorney*, 949 F.2d 997, 998 (8th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 2457, 124 L.Ed.2d 672 (1993). In this case, at the end of the sentencing hearing, the district court commented at length on the reasons for its sentencing decisions but did not relate those reasons specifically to its selection of a 170–month sentence from the applicable Guidelines range of 151 to 188 months.

On the other hand, Bauer did not request further explanation at sentencing, and the record confirms that the district court "thoughtfully discharged his statutory obli-

gation, with a degree of care appropriate to the severity of the punishment ultimately selected." *United States v. Lopez*, 937 F.2d 716, 726 (2d Cir.1991). In these circumstances, there was no reversible error. However, since the case is remanded for redetermination of the appropriate fine, on remand Bauer may move to reopen his sentence. If such a motion is made and granted by the district court, that court may reconsider what sentence to select within the Guidelines range and will then more precisely explain its reasons for that selection.

We vacate the fine imposed by the district court and remand this case for further proceedings consistent with this opinion.