# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3599

_____

United States of America,

        Appellee,

v.

Eugene H. Mathison,

        Appellant.

_____

No. 97-3600

_____

United States of America,

        Appellee,

v.

Perry Gobel,

        Appellant.

Appeals from the United States
District Court for the District
of South Dakota.

_____

No. 97-3602

_____

United States of America,                 *
                                           *
        Appellee,                        *
                                           *
    v.                                     *
                                           *
Robert E. Holmes,                          *
                                           *
        Appellant.                       *
                                           *
                                           *
                                           *

_____

No. 97-3603

_____

United States of America,                 *
                                           *
        Appellee,                        *
                                           *
    v.                                     *
                                           *
Dean G. Chambers,                          *
                                           *
        Appellant.                       *

_____

Submitted:  May 15, 1998

Filed:  September 2, 1998
_____

Before McMILLIAN, NOONAN,[1] and MORRIS SHEPPARD ARNOLD, Circuit
    Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Eugene Mathison and his associates Perry Gobel, Robert Holmes, and Dean Chambers were indicted on numerous counts of conspiracy, *see* 18 U.S.C. § 371, mail fraud, *see* 18 U.S.C. § 1341, wire fraud, *see* 18 U.S.C. § 1343, perjury, *see* 18 U.S.C. § 1623(a), and money laundering, *see* 18 U.S.C. § 1956(a)(1), § 1957(a).  The government alleged that Mr. Mathison operated three fraudulent investment schemes by himself and that the four defendants together operated a fourth.  While operating the fourth investment group alone, the government charged, the defendants defrauded family, friends, and acquaintances of nearly $1 million.

Mr. Mathison's investment groups operated as a simple Ponzi scheme.  The first limited group of investors formed the Northern States Investment Group.  Mr. Mathison convinced his victims that they were investing with a Kansas City broker who had devised a way to make exceptional returns in the commodities market.  Once investors gave Mr. Mathison their money, he began mailing statements showing monthly rates of return from about 7 percent to 17.6 percent.  Mr. Mathison never invested the money, however; instead, he deposited the money into a bank account and paid out

_____

[1]The Honorable John T. Noonan, Jr., United States Circuit Judge for the Court of Appeals for the Ninth Circuit, sitting by designation.

most of it to himself and his wife. Some small amounts of money were returned to investors.

The next two investment groups, Goldstar and Universal, operated in substantially the same manner as Northern States. In their promotional materials, Mr. Mathison reported the paper success of the first group and all but promised the same success for the new ones. Goldstar collected $102,500 and Universal collected $171,000. Again, no money was ever invested, and substantial payouts were made to Mr. Mathison and his wife from the groups' funds.

In June, 1995, Mr. Mathison was arrested for crimes arising out of his activities with the first three groups. The government produced proof at trial that Mr. Chambers knew that Mr. Mathison had been arrested for fraud and for money laundering. Later that year, the four defendants formed the final relevant entity, the Perob Investment Group. By this time, the government was already investigating Mr. Mathison's activities, and thus the final group's organization was, the government alleged, calculated to conceal Mr. Mathison's involvement. The government alleged also that Mr. Gobel and Mr. Holmes solicited friends and relatives to invest in the group, and that Mr. Chambers acted as the registered agent for the group, while Mr. Mathison continued to do the "investing" from behind the scenes. The defendants collected $947,000 from the Perob investors.

The government maintained at trial that Mr. Gobel and Mr. Holmes used the fake statements from the previous investment groups to lure victims to Perob. All four defendants received sizable amounts of money from Perob's bank accounts. Mr. Mathison laundered some of this money by wiring it to an associate at a bank in Arizona, who then wired the money back to Mr. Mathison, or into another account, at his direction. Much of this laundered money was wired into accounts associated with the first three investment groups and wholly under Mr. Mathison's control.

All four defendants were found guilty of conspiracy, mail fraud, and money laundering, and Mr. Mathison was convicted on five additional counts of wire fraud. Mr. Holmes was convicted in addition on one count of perjury. The trial court[2] sentenced the defendants to lengthy prison terms and ordered them to make restitution. They urge reversal on a great number of diverse grounds. Because we find none of their arguments persuasive, we affirm the trial court's judgments.

## I.

Mr. Mathison asserts that the trial court was biased against him. He maintains that the judge should have recused himself from this case because Mr. Mathison had embarrassed and humiliated him during a deposition in a civil case several years earlier when the judge was in practice. Federal law requires a federal judge to disqualify himself or herself where "his impartiality might reasonably be questioned," *see* 28 U.S.C. § 455(a), or where "he has a personal bias or prejudice concerning a party," *see* 28 U.S.C. § 455(b)(1).

We find, after careful review, that Mr. Mathison waived his right to seek recusal from the trial court. We have held that claims under § 455 will not be considered unless they were timely made before the trial court. *See United States v. Bauer*, 19 F.3d 409, 414 (8th Cir. 1994). In a letter that he sent to the trial court following some particularly adverse rulings, Mr. Mathison referred to the events that he now claims warranted a recusal. The letter indicated his opinion that the events alluded to might warrant the judge's recusal, but nowhere did the letter actually seek recusal. We therefore believe that the trial court quite properly did not consider the letter to be a motion to recuse.

---

[2]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

Mr. Mathison chose not to raise the matter of recusal before the trial court, although he plainly thought that he might have a basis for asking the judge to recuse. Mr. Mathison did not simply forfeit an objection by mere inadvertent inaction; he made a conscious choice not to raise the objection. In these circumstances, it is plain to us that he has waived it. *See United States v. Olano,* 507 U.S. 725, 732-34 (1993).

## II.

Mr. Holmes and Mr. Chambers mount several challenges to the trial court's refusal to sever their trials from Mr. Mathison's. In counts 1-37, only Mr. Mathison was a defendant, and crimes arising out of only the first three of the four investment schemes were alleged. In counts 38-61, which concerned the fourth investment group, all four defendants were charged.

Although Mr. Holmes and Mr. Chambers moved for severance during a pretrial hearing, they did not renew the motion at the close of the government's case or at the close of all of the evidence. Because of this omission, we review the denial of the motion for plain error only. *See id.* at 733-34. To succeed on plain-error review of the denial of a motion to sever, a defendant must show an abuse of discretion by the trial court as well as "prejudice affecting his substantial rights and an extraordinary reason to reverse." *United States v. Rogers*, No. 98-1073, 1998 WL 414468, at *3 (8th Cir. July 24, 1998); *see also* Fed. R. Crim. P. 14.

While it is true, as the defendants point out, that the acts alleged in counts 1-37 were distinct from those alleged in counts 38-61, the trial court did not abuse its discretion by having all of the counts considered in the same trial. Mr. Mathison's first three investment groups served as the model and progenitor for the final scam. At least one defendant, Mr. Mathison, was involved in all of the acts, and the government presented evidence allegedly linking Mr. Gobel and Mr. Holmes to the acts underlying all of the counts. Furthermore, the complex money-laundering scheme, for which all of the defendants were convicted, involved money obtained from all four of the

investment groups. As in a typical Ponzi scheme, money obtained from victims of the final scam was used to placate victims of the previous three scams. Finally, promotional materials from the first three scams were used to defraud investors in the fourth one. For all of these reasons, we hold that the offenses charged were "of the same or similar character" and were "based on ... two or more ... transactions connected together," *see* Fed. R. Crim. P. 8(a), and that joinder of all of the counts was therefore proper.

It is true that the government produced more evidence of Mr. Mathison's guilt than it did of his co-defendants', and it is also true that Mr. Mathison was indicted on more counts than his co-conspirators were. But "[a] defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than the evidence against him. ... Severance becomes necessary [only] where ... a jury could not be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. Jackson*, 549 F.2d 517, 525 (8th Cir. 1977), *cert. denied*, 430 U.S. 985, 431 U.S. 923, 968 (1977). In this case, "any risk of prejudice was reduced by the district court's instructions, which directed the jury to consider each offense and its supporting evidence separately, and to analyze the evidence with respect to each individual without considering evidence admitted solely against other defendants." *United States v. Noske*, 117 F.3d 1053, 1057 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 315, 389 (1997), 118 S. Ct. 1060 (1998).

More important, because a substantial amount, if not all, of the evidence presented with respect to counts 1-37 would have been admissible (and likely would have been used) in a separate trial on counts 38-61, Mr. Holmes and Mr. Chambers could not have been prejudiced by the trial court's failure to sever their trials from that of Mr. Mathison. We have held, moreover, that defendants "charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Boyd*, 610 F.2d 521, 525 (8th Cir. 1979), *cert. denied*, 444 U.S. 1089 (1980). We hold, therefore, that all of the

defendants were "alleged to have participated ... in the same series of acts or transactions," *see* Fed. R. Crim. P. 8(b), and that a joint trial was thus proper.

Mr. Holmes and Mr. Chambers also argue that the trial court erred in failing to sever their trials from Mr. Mathison's because his *pro se* representation was prejudicial to their right to a fair trial. Requests for severance of defendants under Fed. R. Crim. P. 14 must be made prior to trial. *See* Fed. R. Crim P. 12(b)(5). Because Mr. Holmes and Mr. Chambers never requested severance on this ground from the trial court, we review for plain error. *See Olano*, 507 U.S. at 733-34. Our examination of the record convinces us that Mr. Mathison's *pro se* representation was prejudicial to no one other than himself, and we therefore find that the court did not commit plain error in failing to sever the defendants' trials on this ground. *Id*. at 734-35.

### III.

Mr. Mathison maintains that the trial court erred in denying his motion to suppress evidence that was seized from his office pursuant to the first of two warrants that were issued to search his property. He argues that he was improperly denied a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154 (1977), that the magistrate judges who issued the warrants were not neutral and detached, that the affidavit upon which the first search warrant was based was insufficient to state probable cause, that the first warrant was not specific enough, and that items removed from his office during the first search were not described in the warrant.

The FBI originally investigated Mr. Mathison for crimes relating to a fraudulent loan scheme in which, the government asserted, he solicited borrowers for a number of sham loan offerings. The affidavit that was presented in support of the application for the first search warrant, and sworn out by FBI Special Agent Danny Reynolds, was based on several sources of information, all tending to show that Mr. Mathison, through several of his business entities, was involved in soliciting fraudulent loan deals. The

first warrant therefore authorized the seizure of all records at Mr. Mathison's office that pertained to 17 distinct businesses and 11 individuals, including Mr. Mathison himself.

For the affidavit, Mr. Reynolds first obtained incriminating information from a special agent with the South Dakota Division of Criminal Investigation. That information was based on interviews with five separate borrowers and on several letters indicating that Mr. Mathison's office might contain evidence that those and other borrowers were defrauded. Second, Mr. Reynolds reviewed bank records provided pursuant to a federal grand jury subpoena of the ringleader behind the fraudulent loan scheme, one Ronald Totaro. The accounts revealed wire transfers from Mr. Mathison and his associates. Third, Mr. Reynolds interviewed Lynn Tjaden, an alleged victim of one of Mr. Mathison's loan schemes, and Mr. Tjaden provided information about the form of the scam, provided the names of several other borrowers, and indicated that relevant evidence could be found at Mr. Mathison's office. Fourth, Mr. Reynolds reviewed a report of an FBI interview with Eugene Drong, an associate of Mr. Mathison's who claimed that he too was defrauded by Mr. Totaro and that Mr. Mathison had introduced him to Mr. Totaro. Fifth, Mr. Reynolds obtained information from a special agent with the IRS Criminal Investigation Division suggesting that Mr. Mathison was engaged in tax evasion and money-laundering activities in connection with the operation of one of his numerous business entities, and that evidence of such activity could be found at his office. Finally, Mr. Reynolds listened to a recording of a phone conversation between Mr. Mathison and Leroy Anderson, a potential borrower, in which Mr. Mathison solicited Mr. Anderson to apply for one of Mr. Totaro's presumably fraudulent loans.

A defendant is entitled to a hearing to determine the veracity of a search warrant affidavit if he or she can make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly, and that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible

to find probable cause. *See id.* at 155-56; *United States v. House*, 604 F.2d 1135, 1141, 1141 n.9 (8th Cir. 1979), *cert. denied*, 445 U.S. 931 (1980). Mr. Mathison argues that the affiant in his case intentionally included false statements and omitted exculpatory ones.

We agree with the trial court that Mr. Mathison was not entitled to a *Franks* hearing because he did not make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56; *see also United States v. Garcia*, 785 F.2d 214, 222 (8th Cir. 1986), *cert. denied*, 475 U.S. 1143 (1986). The requirement of a substantial preliminary showing "is not lightly met." *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987), *cert. denied*, 481 U.S. 1040 (1987). A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing. *Franks*, 438 U.S. at 171. While Mr. Mathison identified what he said were specific falsehoods in the affidavit, he offered no proof that the alleged falsehoods were deliberate or reckless. "When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required." *United States v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 1402 (1998).

Mr. Mathison further alleges that the affiant omitted material information about one of the informants on whom the affiant relied in gathering information for the affidavit, specifically, that the informant was in jail and charged with grand theft at the time that he made the relevant statements. Mr. Mathison asserts that the omission was " 'clearly critical' to the finding of probable cause," and thus that recklessness may be inferred from the fact of the omission. *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986), quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). While we do not dispute that evidence of an informant's credibility may sometimes be critical to a finding of probable cause, we agree with the trial court that, in this case, the

inclusion of the omitted information would not have affected that determination. The amount of evidence recited in the affidavit was considerable, to say the least, and was certainly enough to overcome the doubt, if any, that might have been cast on its weight by the informant's alleged lack of credibility.

## IV.

Mr. Mathison argues in addition that the magistrate judges who issued the warrant under discussion and a subsequent one were not neutral and detached. In connection with his suppression motion, Mr. Mathison filed an affidavit stating that, in the course of his business of holding seminars on living trusts, he criticized the way in which the magistrate judge who issued the first warrant had handled a probate case while that magistrate judge was in practice. We have held that a magistrate judge is neutral and detached if his or her impartiality cannot reasonably be questioned. *See United States v. DeLuna*, 763 F.2d 897, 907 (8th Cir. 1985), *cert. denied*, 474 U.S. 980 (1985).

We agree with the trial court that Mr. Mathison has not alleged facts that could lead a reasonable person to believe that either magistrate judge was unable to assess impartially the existence of probable cause for the relevant search warrant. The record contains no evidence that the magistrate judge who issued the first warrant was actually aware of Mr. Mathison's criticisms. It may be that Mr. Mathison was not neutral and detached with respect to that magistrate judge, but one may not reasonably infer from this that the opposite was true. Mr. Mathison's claim that the magistrate judge issuing the second warrant also was not neutral and detached, moreover, amounts to nothing more than a vague and conclusory allegation.

## V.

Mr. Mathison maintains that the affidavit upon which the first search warrant was premised was insufficient to support a finding of probable cause for the search of several of the distinct business entities for which the search warrant was issued. In

order to find probable cause, the court issuing a search warrant must decide " 'whether, given all the circumstances set forth in the affidavit before [it], ... there is a fair probability that ... evidence of a crime will be found.' " *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986), quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Taken together, the information in the affidavit in question strongly suggests that Mr. Mathison was using several of his businesses to recruit victims for Mr. Totaro's fraudulent loan deals, and that evidence tending to demonstrate Mr. Mathison's involvement could be found in the records of those corporate entities, located in his office. Because there is more than ample evidence in the affidavit that Mr. Mathison was involved in criminal activity, and that evidence of this involvement could be found in his financial records, the affidavit properly supported the magistrate judge's finding of probable cause with respect to all of the records seized under the first warrant.

We find, likewise, that the first search warrant was appropriately specific; it did not, contrary to another of Mr. Mathison's assertions, authorize a general search. A search warrant must be specific enough to avoid a "general, exploratory rummaging" of a person's property, *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). In this case the FBI had considerable information regarding Mr. Mathison's criminal activity, including the names of 17 corporations that were potentially involved in criminal wrongdoing. But fraud, by its nature, entails concealment. The FBI could not be certain that the records of the 17 corporate entities about which it had information would contain evidence of Mr. Mathison's crimes. It therefore sought, and received, authorization to search all of Mr. Mathison's financial records in addition to the delineated corporate records. Because the first search warrant limited the search to all records pertaining to the specified corporations and to certain individuals' financial records, we find that it was sufficiently particular. *See, e.g., United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996), *cert. denied*, 117 S. Ct. 690 (1997).

Similarly, we find that the trial court properly denied Mr. Mathison's motion to suppress certain evidence on the ground that its seizure exceeded the scope of the first

search warrant. Mr. Mathison alleges that the FBI unlawfully seized documents pertaining to a number of companies not specifically named in either the affidavit or the warrant. The trial court declined to suppress that evidence, finding that it fit within the confines of the warrant. We agree. As we have noted, the first warrant properly authorized the seizure of Mr. Mathison's financial records. Because the disputed evidence related to investment groups in which Mr. Mathison was listed as an investor, the seizure did not exceed the scope of the warrant.

We therefore affirm the trial court's denial of Mr. Mathison's motion for a *Franks* hearing and of his motion to suppress. His claim that evidence obtained pursuant to a second search, under a second warrant based on information derived from the initial search, should be suppressed as fruit of the poisonous tree is therefore moot.

## VI.

Mr. Mathison maintains that the trial court erred in refusing to force the government to allow him to examine the property seized from his home and office during the second search. When Mr. Mathison moved to inspect that evidence, the trial court treated it as a motion for discovery. At the hearing at which this motion was considered, the government indicated that it had complied, and would continue to comply, with all discovery requests. Mr. Mathison acknowledged that the government had sufficiently accommodated his discovery requests but then suggested that he had been denied access to the evidence seized under the second search warrant. When the government indicated that Mr. Mathison's attorney had in fact reviewed some of the documents, however, Mr. Mathison seems to have acquiesced. We detect no error here.

## VII.

All of the defendants contend that the trial court erred in refusing to extend immunity to one of their witnesses. The defendants subpoenaed Sharon Scharlepp, Mr. Mathison's former secretary, to testify, whereupon Ms. Scharlepp informed the trial

court that she would assert her Fifth Amendment right not to testify. The government declined to grant immunity to Ms. Scharlepp in exchange for her testimony, despite the fact that it had granted her immunity when she testified against Mr. Mathison at an earlier tax-evasion trial and in interviews with the government before the defendants' trial.

The relevant federal immunity statutes, 18 U.S.C. §§ 6001-6003, plainly do not give courts the authority to immunize witnesses on motion of a party. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983); *see also United States v. Capozzi*, 883 F.2d 608, 612 n.7 (8th Cir. 1989), *cert. denied*, 495 U.S. 918 (1990). Nor can a trial court compel the government to offer statutory immunity. *See United States v. Eagle Hawk*, 815 F.2d 1213, 1217 (8th Cir. 1987), *cert. denied*, 484 U.S. 1012 (1988). Assuming, *arguendo*, that a trial court has some inherent authority to immunize witnesses, "it is clear that such an order is an extraordinary remedy, to be used sparingly, and then only where the proffered evidence is '*clearly exculpatory*.'" *Capozzi*, 883 F.2d at 614, quoting *Eagle Hawk*, 815 F.2d at 1217 (emphasis in original).

In this case, none of the defendants made an offer of proof on what Ms. Scharlepp would have testified to if she had been granted immunity. Even if the trial court had the legal authority to grant immunity, therefore (a proposition that we very much doubt), it could not have done so in this instance, because it was never given a factual predicate sufficient to support the conclusion that the defendants were entitled to what they requested. There is thus no error here, plain or otherwise.

VIII.

Mr. Gobel was convicted of conspiracy, mail fraud, and money laundering. He contends that the trial court erred in denying his motions for judgment of acquittal on the ground that the evidence was insufficient to support his convictions. Specifically, Mr. Gobel argues that the government failed to prove that he intended to enter into a

-14-

conspiracy, that he intended to defraud any of the victims whom he recruited for the investment group, and that he was even aware of the existence of any financial impropriety or money laundering.

We review a denial of a judgment of acquittal by considering the evidence in the light most favorable to the verdict. If the evidence so construed would permit a reasonable jury to find the defendant guilty, we must uphold the verdict. *See United States v. Smith*, 104 F.3d 145, 147 (8th Cir. 1997). Viewing the evidence in this light, we find that the record is sufficient to support Mr. Gobel's convictions.

To convict a defendant of conspiracy, the government must demonstrate that there was an agreement to achieve an illegal purpose and that the defendant knew of the agreement and knowingly became a part of the conspiracy. *See United States v. Berndt*, 86 F.3d 803, 809 (8th Cir. 1996). We have held, however, that "[o]nce the existence of 'a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement.' " *United States v. Agofsky*, 20 F.3d 866, 870 (8th Cir. 1994), *cert. denied*, 513 U.S. 909, 949 (1994), quoting *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990). The government provided evidence that Mr. Gobel was closely associated with the relevant investment group: There was proof that he was instrumental in its organization, that he accepted a sizable amount of money from it, and that he encouraged victims to invest in it. In addition, the record would support a finding that Mr. Gobel feigned an inability to recollect how many people he encouraged to make investments.

We hold, therefore, that even though the evidence presented by the government was not overwhelming, it was sufficient to prove, beyond a reasonable doubt, Mr. Gobel's participation in the conspiracy. As a result of this involvement, he was also properly convicted on related mail fraud and money-laundering charges. *See United States v. Escobar*, 50 F.3d 1414, 1420 (8th Cir. 1995) ("each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-

conspirator in the course and furtherance of the conspiracy"); *see also Pinkerton v. United States*, 328 U.S. 640, 647 (1946).

IX.

Mr. Mathison asserts that the trial court erred in a number of ways in sentencing him. He argues first that the trial court improperly required that he make restitution and did so without first assessing his ability to pay. The Mandatory Victim Restitution Act of 1996, however, requires restitution for injuries inflicted in the course of crimes involving fraud. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). The same statute requires that restitution be ordered "without consideration of the economic circumstances of the defendant." *See* 18 U.S.C. § 3664(f)(1)(A).

Mr. Mathison also maintains that his sentence constitutes cruel and unusual punishment because it will require him to be in prison beyond the extent of his life expectancy. But we have held in a previous case that a sentence that is within the range prescribed by statute, although in excess of a defendant's life expectancy, does not violate the Eighth Amendment. *See United States v. Mendoza*, 876 F.2d 639, 640 (8th Cir. 1989).

X.

Mr. Mathison raises numerous claims of ineffective assistance of counsel. While such claims must ordinarily be raised in a petition for postconviction relief, *see United States v. Triplett*, 104 F.3d 1074, 1083 (8th Cir. 1997), *cert. denied,* 117 S. Ct. 1837, 2445 (1997), we believe that Mr. Mathison's claims in this instance are ripe for review because he raised them below and the trial court ruled on them. We reject all of them as without merit, but address in detail only the claim that Mr. Mathison's counsel was ineffective in not obtaining a *Franks* hearing in connection with Mr. Mathison's motion to suppress.

We have already held that Mr. Mathison's first motion for a *Franks* hearing was correctly denied because, among other things, he did not make a preliminary showing of deliberate or reckless untruthfulness by Mr. Reynolds that was sufficient to justify a hearing. Mr. Mathison later made a *pro se* motion for a *Franks* hearing that was insufficient for the same reason. While he asserts on appeal that his lawyer could have reasonably discovered certain additional facts that would have supported the original motion for a *Franks* hearing, those additional facts did not tend to show that Mr. Reynolds's alleged untruthfulness was deliberate or reckless. Mr. Mathison would thus not have been entitled to a *Franks* hearing even if his lawyer had discovered the facts that Mr. Mathison asserts should have been discovered. In our view, then, Mr. Mathison cannot show prejudice from his lawyer's alleged shortcomings, and this claim of ineffective assistance must therefore fail.

## XI.

Mr. Mathison makes a number of other arguments, all of which we have considered carefully and find to be entirely without merit.

## XII.

For the foregoing reasons, we affirm the judgments of the trial court.

NOONAN, Circuit Judge, concurring and dissenting.

I concur in the court's opinion except as to its holding on Mathison's claim of ineffective assistance of counsel. The usual way of ruling on such claims is on a motion for habeas corpus. See United States v. Petty, 1 F.3d 695, 696 (8th Cir. 1993). The record here is so sparsely developed that I cannot form an opinion on the merits of the claim. Mathison's account of his counsel's failure to move for recusal in itself warrants more inquiry.

-17-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.