# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2554

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Allen Kay

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 15, 2013
Filed: June 25, 2013

_____

Before SMITH, MELLOY, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Richard Allen Kay ("Kay") pleaded guilty to charges of drug-related conspiracy, money laundering, structuring to avoid reporting requirements, and conspiracy to engage in the interstate transportation of stolen goods. The district court imposed a 200-month prison sentence; a $500,000 fine; and a $300,000 restitution award. On appeal, Kay argues that his prison sentence is procedurally and

substantively unreasonable. He also contends that the $500,000 fine is contrary to the court's only finding of fact regarding his ability to pay. Finally, Kay argues that the evidence does not support the court's restitution award. We affirm the district court's sentence and restitution award, but we vacate the fine and remand for further proceedings.

## I. *Background*

In 1995, Kay began transporting marijuana across state lines for distribution in Minnesota. Two years later, Kay opened a jewelry business, which he used to launder money acquired through the sale of marijuana. Kay's jewelry business also sold diamonds that he bought from his sister, Michelle Kay ("Michelle"). Michelle stole two diamonds every other week for six years from her employer, Sterling Jewelers.

Kay was arrested and charged in a superseding indictment with conspiracy to distribute and possess with intent to distribute over 1,000 kilograms of marijuana, three counts of money laundering, eight counts of structuring to avoid a financial reporting requirement, and conspiracy to engage in the interstate transportation of stolen goods. The superseding indictment alleged that Kay made five trips to Ohio to obtain diamonds from Michelle. It alleged that Kay paid Michelle between $50,000 and $100,000 total for the stolen diamonds and that this amount represented only "a small fraction" of the diamonds' actual value. Just before trial was set to begin, Kay pleaded guilty, without a plea agreement, to all counts in the superseding indictment.

The district court ordered the preparation of a presentence investigation report (PSR). The PSR assigned Kay responsibility for between 1,000 and 3,000 kilograms of marijuana, resulting in a base offense level of 32. Kay received a four-level enhancement for being a leader of the conspiracy pursuant to U.S.S.G. § 3B1.1(a). He also received a two-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 34. Based on a total offense

level of 34 and a criminal history category of III, the PSR calculated a sentencing range of 188 to 235 months' imprisonment and a fine range between $17,500 and $10,000,000.

Sterling Jewelers prepared a victim impact statement and submitted it to the probation office for use in preparing the PSR. The PSR reported that Sterling Jewelers based its loss estimate on Michelle's testimony. The PSR also stated that Sterling Jewelers conservatively estimated that Michelle had stolen 100 diamonds and that Sterling Jewelers[1] then conservatively estimated the value of each stolen diamond at $6,000, based on the value of six loose diamonds that were recovered from Michelle. The PSR stated that Sterling Jewelers then reduced that estimate by half, for a value of $3,000 per stolen diamond. This resulted in a loss estimate of $300,000, for which Sterling Jewelers requested restitution.

Paragraph 108 of the PSR stated that "[b]ased on the above financial information and the defendant's restitution obligation, the defendant does not have the ability to pay a fine within the established fine range at the time of sentencing." The court adopted the PSR's factual findings as its own. The court made no other findings regarding Kay's ability to pay a fine. The district court sentenced Kay to 200 months' imprisonment and ordered him to pay $500,000 in fines and $300,000 in restitution to Sterling Jewelers.

---

[1]Aaron Wichmann, a loss prevention manager for Sterling Jewelers, testified at Kay's sentencing hearing. Wichmann stated that Sterling based its loss calculation on Michelle's admission that she stole two diamonds every two weeks for six years. Wichmann testified that Sterling Jewelers conservatively estimated the value of the diamonds at $3,000 each, for a total of $832,000. Wichmann testified that its loss estimate of $300,000 was a "conservative estimate based on [Michelle's] admission and based on what [Sterling Jewelers] actually think[s] happened in the case."

II. *Discussion*

A. *The Prison Sentence*

In reviewing Kay's prison sentence, this court must

> first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.

*Gall v. United States*, 552 U.S. 38, 51 (2007).

Kay argues that his "sentence was procedurally unreasonable because the district court failed to provide adequate explanation for why ten years was not a sufficient sentence to punish [him] for his crimes." Kay did not assert procedural error below, so we review this issue for plain error. *United States v. Phelps*, 536 F.3d 862, 865 (8th Cir. 2008) ("If a defendant fails to timely object to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error."). Kay also contends that a sentence of 200 months is substantively unreasonable because the court "ignored compelling mitigation arguments." Kay offered two mitigation arguments to the district court. First, Kay argued that a prison sentence has an extraordinary deterrent effect on a person such as himself, who had previously served no more than 30 days in jail. Second, he argued that the Guidelines fail to take into account the nation's growing public acceptance of marijuana.

"The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his

-4-

own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (citing *United States v. Taylor,* 487 U.S. 326, 336–37 (1988)). "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.* at 357.

The record reveals that the district court actually did consider Kay's mitigation arguments. The court even lowered Kay's prison sentence as a result of his first argument. The district court stated:

> I have considered the fact that you've never done significant time before or been incarcerated before. Usually for a crime of this duration and significance I would be at the upper end of the box. I've cut back on that. I think you need to be closer to the middle of the appropriate guideline.

Furthermore, as for Kay's "growing public acceptance of marijuana" argument, the district court stated:

> Well, this is a crime that took place over a long period of time and involves a massive amount of marijuana. I won't address all of the sentencing arguments that have been made and it may be that some day some portions of marijuana use will be legalized, but this case is much more than use of marijuana. This is massive dealing over a period of time involving money laundering, structured financial transactions, interstate transportation of stolen goods. The sort of crime that it became may have started small with a little marijuana, but it grew and grew and grew.
>
> It doesn't take long sitting in my position and talking to defendants, including those in your case, to see how drug dealing and crime has ruined lives. I think you, yourself, you've benefit[t]ed from

-5-

treatment and have done well, as I understand, through treatment as have many of the other defendants, and some of them are happy to have broken the chain that may have been more profitable, but less satisfying in life. So I'm not going to talk further about legalization of marijuana, but this case raises entirely different issues than are discussed by public opinion polls on marijuana use.

The record reveals that the district court appropriately considered Kay's mitigation arguments. We hold that the district court did not plainly err or abuse its discretion in sentencing Kay to 200 months' imprisonment. This is not "'the unusual case when we reverse a district court sentence . . . as substantively unreasonable.'" *United States v. San-Miguel*, 634 F.3d 471, 476 (8th Cir. 2011) (alteration in *San-Miguel*) (quoting *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc)).

## B. *The $500,000 Fine*

Kay argues that the district court erred in imposing a $500,000 fine because the court's own findings showed that he had no ability to pay the fine. "A district court's imposition of a fine and the determination of the amount of the fine will not be reversed unless clearly erroneous." *United States v. Allmon*, 500 F.3d 800, 807 (8th Cir. 2007). Nevertheless, plain error review is appropriate when the defendant failed to object below. *Id.* The government argues that we should review for plain error. The government avers that because Kay "objected to the imposition of a fine but did not object to the district court's failure to make any findings concerning his ability to pay, . . . his claim on appeal concerning any alleged lack of findings is reviewed for plain error." But Kay's claim on appeal is not that the district court made *no* findings regarding his ability to pay. Rather, Kay argues that the district court actually found that he had no ability to pay. Paragraph 108 of the PSR, which the court adopted as its own finding of fact, stated that "[b]ased on the above financial information and the defendant's restitution obligation, the defendant does not have the ability to pay a fine within the established fine range at the time of sentencing." We find that Kay's timely

objection to the court's imposition of the $500,000 fine preserved this issue for appeal, and plain error review is not appropriate.

Kay argues that the findings in the PSR, which the court adopted as its own, showed that he had no ability to pay and that no facts in the record contradicted that finding. Furthermore, he maintains that the government effectively conceded that it could offer nothing but speculation to support its request that the court impose a fine. The government responds that the PSR's determination of Kay's ability to pay reflect only those assets that the government was able to locate. It argues that Kay's history of drug trafficking, dealing in stolen diamonds, and money laundering shows that he has access to resources that are not reflected in the PSR.

"The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). "A sentencing court must make specific factual findings on the record demonstrating that it has considered the defendant's ability to pay the fine." *United States v. Patient Transfer Serv., Inc.*, 465 F.3d 826, 827 (8th Cir. 2006) (citing *United States v. Walker,* 900 F.2d 1201, 1206 (8th Cir. 1990)). "It is an incorrect application of the [G]uidelines to impose a fine that a defendant has little chance of paying." *United States v. Granados*, 962 F.2d 767, 774 (8th Cir. 1992).

The government cites *United States v. Berndt*, 86 F.3d 803 (8th Cir. 1996), to bolster its argument that Kay's history of concealing assets supports an inference that he is currently concealing assets that are not reflected in the PSR. In *Berndt*, the PSR indicated that the defendant had "a negative net worth of -$95,255.00 with a net monthly cash flow of $440.00." *Id.* at 807. Nevertheless, the court imposed a $30,000 fine, and the defendant appealed. *Id.*

> The government alleged that Berndt was hiding assets and overstating his debts. Specifically, the government disputed the

defendant's claims that he owed a friend, Scott Keller, $50,000 and his grandfather $10,000 in business loans. The government also believed that the defendant transferred almost $25,000 worth of assets to Keller and hid $30,000 in his attic. The government contended that the total amount of undisclosed assets was $78,950.

*Id.* This court affirmed, finding that "there is substantial evidence that the defendant attempted to conceal assets from the government for the purpose of reducing the amount of fine he would be required to pay." *Id.* at 808. Similarly, here, the government argued at sentencing:

> With respect to Mr. Kay and the massive amount of money that he was able to accumulate through the continued sale, the daily sale of marijuana his entire adult life, the Government is convinced, as it has laid out in its position pleading, that there are assets that Mr. Kay has available to him that we just simply don't know about, can't locate and probably won't find.

Moreover, the government's sentencing memorandum stated:

> Much of the money [Kay] made selling marijuana was used to purchase and improve [Kay's] lavish home, pay for luxury automobiles and finance foreign travel. The government is pursuing forfeiture of the items that can be recovered. Still, the government cannot account for large amounts of money and believes that [Kay] has stashed away resources he has not disclosed. This would be consistent with prior behavior. Officers recovered $5000.00 cash, some loose diamonds and [Kay's] passport in a search warrant executed on [Kay's] brother's property in 2010. [Kay] has previously utilized foreign bank accounts. [Kay] has likely hoarded other resources that could be retrieved once he has finished serving his sentence.

But the difference between this case and *Berndt* is that in *Berndt* the government alleged specific facts regarding the defendant's various means of concealment and

alleged specific dollar amounts of concealed assets. *Berndt*, 86 F.3d at 807. Here, in contrast, the government has offered only vague allegations of its own inability to "account for large amounts of money" and its mere "belie[f] that [Kay] has stashed away" or "likely hoarded other resources" because "[t]his would be consistent with [Kay's] prior behavior." Such allegations do not rise to the same level of "substantial evidence that the defendant attempted to conceal assets from the government for the purpose of reducing the amount of fine he would be required to pay." *See id.* at 808. Consequently, this case differs substantially from *Berndt*.

Here, the only finding in the record regarding Kay's ability to pay is in paragraph 108 of the PSR, which states that "[b]ased on the above financial information and the defendant's restitution obligation, the defendant does not have the ability to pay a fine within the established fine range at the time of sentencing." This case is similar to *United States v. Bauer*, where we vacated the fine because "the district court did not expressly find that [the defendant] had the ability to pay a $2,500,000 fine," the court's other findings suggested that the defendant actually had *no* "ability to pay a $2,500,000 fine," and "the court [failed to] explain how it took this and the other § 5E1.2 factors into account in determining the amount of the fine." 19 F.3d 409, 413 (8th Cir. 1994); *see also Walker*, 900 F.2d at 1206 (vacating fine where "the presentence report noted 'it appears the defendant is unable to pay a fine[,]' [y]et the record in the district court d[id] not indicate that any of this information was considered when assessing a $2 million fine"); *United States v. Patient Transfer Serv., Inc.*, 413 F.3d 734, 745 (8th Cir. 2005) (vacating fine where the district court failed to make findings "show[ing] that it considered the defendant's ability to pay the fine and its burden on the defendant," "and the financial information in the PSR suggest[ed] that [the defendant] may not be able to pay the large sum assessed against it"). "Because the record does not reflect how the district court [balanced the U.S.S.G. § 5E1.2 factors] in imposing [Kay's] large fine, we are unable to provide meaningful appellate review. Therefore, we conclude that we must vacate [Kay's] fine and remand for redetermination of this portion of [his] sentence." *Bauer*, 19 F.3d at 413.

C. *The $300,000 Restitution Award*

Kay argues that the district court erred in imposing a $300,000 restitution award. "We review the district court's decision to award restitution for an abuse of discretion and the district court's finding as to the amount of loss for clear error."*United States v. Frazier*, 651 F.3d 899, 903 (8th Cir. 2011) (citing *United States v. Chalupnik,* 514 F.3d 748, 752 (8th Cir. 2008)). The Mandatory Victims Restitution Act (MVRA) provides that

> the court shall order . . . that the defendant make restitution to the victim of the offense . . .
>
> * * *
>
> in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense . . . that is . . . an offense against property under this title, . . . including any offense committed by fraud or deceit . . . and . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(a)(1) and (c)(1)(A)(ii) & (B).

Here, Kay pleaded guilty and was convicted of, among other things, conspiracy to engage in the interstate transportation of stolen goods, in violation of 18 U.S.C. §§ 371 and 2314. This is an offense against property under Title 18. Hence, the MVRA required "the [district] court . . . [to] order . . . that [Kay] make restitution to [Sterling Jewelers]." *Id.* at § 3663A(a)(1). Furthermore, orders of restitution under the MVRA are independent of a defendant's ability to pay. *See id.* at § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.") Hence, Kay's urging that the district court made no effort to determine whether he had the ability to pay a

restitution award is unavailing. The district court's decision to award restitution was not an abuse of discretion.

"The government bears the burden of proving by a preponderance of the evidence 'the amount of the loss sustained by a victim as a result of the offense.'" *United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (quoting *United States v. Young,* 272 F.3d 1052, 1056 (8th Cir. 2001)). Here, the district court found that the government met its burden of proving a $300,000 loss. The court found that "there could have been a claim for a much greater amount than that given the statements of both [Kay] and [Michelle] with regard to Sterling's original evaluation that it may be closer to $800,000 in loss."

Kay argues that the only evidence the government offered to justify the restitution award was the testimony of Sterling Jewelers' loss prevention manager regarding its estimate of the loss caused by Michelle's theft. Kay argues that this testimony was a combination of self-serving speculation and hearsay based on Michelle's untrustworthy admissions. Furthermore, Kay argues that the government never attempted to prove that Michelle turned over to him all, or even most, of the diamonds that she stole from Sterling Jewelers. We disagree. The testimony of Sterling Jewelers' loss prevention manager was not the only evidence supporting the amount of loss. Rather, Kay's own admissions were also very important. In pleading guilty to the superseding indictment, Kay confessed his involvement in a conspiracy to engage in the interstate transportation of the stolen diamonds. In addition, he also admitted that he paid Michelle between $50,000 and $100,000 for the pilfered gems. Kay further admitted that his payments to her were only "a small fraction" of the diamonds' actual value. Thus, Kay's own admissions corroborated Sterling Jewelers' $300,000 loss estimate.

Based on this evidence, we conclude that the district court did not clearly err in imposing a restitution award in the amount of $300,000.

## III. *Conclusion*

Accordingly, we affirm the district court's sentence of 200 months' imprisonment and the restitution award. However, "we . . . vacate [Kay's] fine and remand for redetermination of this portion of [his] sentence." *Bauer*, 19 F.3d at 413.

_____