UNITED STATES of America, Appellee,

v.

Kevin Allen WALKER, Appellant.

No. 89–5268.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1989.

Decided April 6, 1990.

**1202**

Earl P. Gray, St. Paul, Minn., for appellant.

Henry Shea, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and McMILLAN,* District Judge.

PER CURIAM.

Kevin Walker was charged with two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) (1988), and using and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1) (1988). Walker entered a conditional plea of guilty to one of the possession charges and the firearm charge under Fed.R.Crim.P. 11(a)(2), reserving the right to challenge on appeal the district court's denial of his suppression motion. He entered an unconditional plea of guilty to the second possession charge. Walker now appeals the district court's [1] ruling denying

---

* The HONORABLE JAMES B. McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

1. The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

his motion to suppress the evidence seized in a warrantless search of his car. He also challenges the $2 million fine imposed as part of his sentence. We affirm the district court's ruling on the suppression motion, but vacate the district court's fine assessment and remand for reconsideration of the fine.

## BACKGROUND

Andre Billups was arrested after selling eight ounces of cocaine to an undercover agent. Billups agreed to cooperate with law enforcement officials, and identified Walker as his source of cocaine. He reported that Walker had recently moved four kilograms of cocaine to an undisclosed location. Billups stated Walker drove a white conversion van, a blue Mercedes, and a white Cadillac, and had previously delivered cocaine to Billups while driving the van and the Mercedes. Billups also stated Walker had paid for the Mercedes with drug money.

Billups reported that both the Mercedes and the van were equipped with car telephones. To order cocaine, Billups would contact Walker by calling Walker's pager number, and Walker would return Billups' call. With law enforcement agents recording the conversation, Billups telephoned Walker to discuss the money Billups owed Walker from the earlier transaction and to arrange another eight ounce cocaine purchase. When Billups asked which vehicle he would be driving, Walker responded he would be driving his white conversion van.

Law enforcement officers had Walker's residence under surveillance prior to the arranged drug buy, and observed the blue Mercedes at the house. The officers discontinued surveillance at the house, however, to follow a gray Mercedes.[2] When they returned to the house shortly before the arranged transaction was to take place, the blue Mercedes was gone. Surveillance officers at the pre-arranged meeting place observed a white van driving in the area. They stopped the van, and arrested Walker and his girlfriend, Felicia Gude. Officers

found ten ounces of cocaine on the floor of the van, along with $1800.

Gude informed officers that Walker had driven the blue Mercedes to her house, and left it parked in front of her house. The officers, who obtained a ring of keys from Walker that included keys for the Mercedes, unlocked the Mercedes, entered it, and drove it to the Bureau of Criminal Apprehension headquarters where it was searched. No warrant was obtained prior to searching the car. The trunk of the car contained one kilogram of cocaine, three nine millimeter pistols and an electronic scale. Two weeks later, after hearing a rumor "on the streets" that there was additional contraband in the car, officers searched it a second time and found $57,000 in a spare tire compartment.

Walker filed a motion to suppress the evidence seized in the search of the Mercedes. The district court concluded that the search was valid and denied the motion. Walker was sentenced to 125 months on each of the possession charges, and a consecutive five year term on the firearm charge. He also was assessed a $2 million fine. Walker appeals the district court's ruling on the suppression motion and the fine assessment.

## THE WARRANTLESS SEARCH OF THE MERCEDES

The district court concluded any one of three different legal theories would support the warrantless search of the Mercedes. First, the district court found there was probable cause to believe the Mercedes contained contraband. Second, the district court found there was reason to believe the Mercedes was forfeitable as the proceeds of drug trafficking. *See* 21 U.S.C. § 881(a)(6) (1988). Third, the district court found there was reason to believe the Mercedes was forfeitable because it facilitated drug trafficking. *See* 21 U.S.C. § 881(a)(4).

Although the automobile exception allowing search of a vehicle without issuance of a search warrant has been flexibly applied, *see United States v. Carney,*

---

**2.** The government refers to this car as the "black" Mercedes, but during the suppression

hearing it is identified as gray. This car was driven by the defendant's twin brother.

471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), law enforcement officers must nonetheless establish probable cause to conduct the search. *Id.* at 390, 105 S.Ct. at 2068. The assessment of probable cause is based on objective facts that would justify the issuance of a warrant. *United States v. Ross,* 456 U.S. 798, 808, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982). This objective test considers whether, given all the circumstances, there is a fair probability that contraband will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). We realize the probable cause determination is based on a "commonsense, practical" assessment of the facts. *Id.* In our view, however, the facts relied on by the government do not establish probable cause to believe the Mercedes contained contraband. Certainly, the facts confirmed the officers' suspicions that Walker was a significant drug dealer. We believe, however, that the facts the officers possessed at the time Walker was arrested support no more than a suspicion that the Mercedes contained cocaine.[3]

We need not base our decision on this conclusion, however, since we find the district court was correct in upholding the warrantless search on the basis of forfeiture. The district court relied on the "facilitation" and "proceeds" sections of the forfeiture statute. *See* 21 U.S.C. § 881(a)(4), (6). We believe the facilitation section validates the seizure and subsequent warrantless search of the Mercedes.

Section 881 declares that vehicles "which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]" are forfeitable to the United States. 21 U.S.C. § 881(a)(4). The government must establish probable cause amounting to more than a mere suspicion to believe the property was used to facilitate drug transactions. *See United States v. Premises Known as 3639–2nd St. N.E., Minneapolis, Minnesota,* 869 F.2d 1093, 1095 (8th Cir.1989); *One Blue 1977 AMC Jeep CJ–5, VIN:J783EA076436 v. United States,* 783 F.2d 759, 761 (8th Cir.1986). Once the government makes this showing, the burden shifts to the defendant to show the property is not subject to forfeiture or that a defense to forfeiture exists. *Id.* An unrebutted showing of probable cause will support a forfeiture judgment. *One Blue AMC Jeep CJ–5,* 783 F.2d at 761.

Billups testified that Walker had delivered cocaine to him while driving the Mercedes on five or six occasions.[4] A forfeiture occurs at the time of the unlawful act, although the seizure may not occur until sometime later. *United States v. One 1978 Mercedes Benz, Four Door Sedan, VIN: LL6–036–12–004084,* 711 F.2d 1297, 1302 (5th Cir.1983) (section 881 does not place any time limitation on forfeiture of property, and car seized three months after used in illegal transaction valid); *United States v. Kemp,* 690 F.2d 397, 401

**3.** The government relies heavily on Billups' statements that Walker had recently moved four kilograms of cocaine and that the Mercedes contained a car phone. The government infers from these statements that the Mercedes was Walker's mobile drug warehouse. We do not attribute much significance to these facts, because at the time of Walker's arrest, the officers lacked sufficient information to connect the Mercedes with the contraband. First, Billups did not know where Walker had originally stored the four kilograms of cocaine or the new location to which it was moved. Second, although the government implies that Walker received Billups' call requesting more cocaine via the car phone in the Mercedes, there was no supporting evidence for this claim. In fact, as the government pointed out, the Mercedes was parked at Walker's house at the time the call was made. The stronger implication is that

Walker returned the call from a telephone in the house. Finally, the government admits the Mercedes was searched only because the agents did not find the four kilograms or government "buy money" in the van. This suggests the agents did not have a reasonable belief as to where the contraband was located, but were searching all possibilities.

**4.** Walker appears to argue that the government's evidence of facilitation relates to the transaction on November 2, when Walker was arrested. However, Agent Campion, who testified at the suppression hearing, stated that his probable cause assessment of facilitation was based on the fact that "[i]t [the Mercedes] had been used by Mr. Walker prior to November [2] to deliver cocaine * * *." (T. 31, 3/1/89).

(4th Cir.1982) (seizure of vehicle for forfeiture need not be contemporaneous with events giving law enforcement officials probable cause for forfeiture); *O'Reilly v. United States*, 486 F.2d 208, 210 (8th Cir.) (seizure of vehicle three months after used in violation of forfeiture statute permissible), *cert. denied*, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973). Therefore, even though Walker did not deliver the cocaine in the Mercedes when he was arrested, the car was still subject to seizure for forfeiture because of the earlier transactions in which the Mercedes was used in violation of section 881. These transactions clearly fall within the statutory language of the facilitation section. *See* 21 U.S.C. § 881(a)(4). Walker did not rebut this evidence but characterized it as an "after the fact rationalization." This unrebutted showing of probable cause supports the government's claim that the car was properly seized as it was subject to forfeiture.

■ The subsequent warrantless search of the Mercedes was also valid. When a vehicle is seized for forfeiture purposes, a warrantless inventory search can be made. *See Cooper v. California*, 386 U.S. 58, 61–62, 87 S.Ct. 788, 790–91, 17 L.Ed.2d 730 (1967); *United States v. Alvarez*, 833 F.2d 724, 728 (7th Cir.1987) (once vehicle seized for forfeiture, it can be searched without a warrant); *O'Reilly*, 486 F.2d at 210–11 (where vehicle seized for forfeiture, officers entitled to conduct inventory search). The agent who conducted the search testified at the suppression hearing that the search was conducted pursuant to a department policy that requires a complete inventory of the contents of impounded vehicles. (T. 32, 1/17/89). Thus, the warrantless search of the Mercedes after it was seized for forfeiture was a valid inventory search. *United States v. Fafowora*, 865 F.2d 360, 362–63 (D.C.Cir.) (vehicle seized for forfeiture as facilitating heroin transaction was properly searched as part of DEA's routine inventory search policy), *cert. denied*, —— U.S. ——, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989); *O'Reilly*, 486 F.2d at 210–11. The district court was therefore correct in denying Walker's suppression motion.

## THE CHALLENGE TO THE FINE

The district court imposed a $1 million fine for the first possession charge, and a concurrent $2 million fine for the second possession charge, noting that Walker's "reprehensible conduct" justified the severe penalty. Walker appeals the fine, arguing that it violates the eighth amendment's prohibition against excessive fines, and represents an incorrect application of the sentencing guidelines. We do not reach the constitutional issue because we conclude the district court failed to consider the relevant guideline factors in imposing this fine. Therefore, we vacate the fine, and remand this case for further proceedings.

■ This court's review of a sentence imposed under the guidelines is limited in this case to determining whether the district court improperly applied the sentencing guidelines. *See* 18 U.S.C. § 3742(a)(2) (1988). We must accept the findings of the district court unless they are clearly erroneous, 18 U.S.C. § 3742(e), and affirm the sentence if those facts were properly applied to the guidelines. *See United States v. Brett*, 872 F.2d 1365, 1371 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Walker pled guilty to charges involving a substantial amount of cocaine, and was identified as a significant drug dealer. He had five prior felonies, and a substantial juvenile criminal record. The district court noted these facts in its sentencing memorandum, and we cannot say these facts are clearly erroneous. We believe, however, that the district court's failure to consider certain guidelines factors relevant to imposing fines resulted in an incorrect application of the guidelines that requires a remand.

Guidelines § 5E1.2 (formerly section 5E4.2) identifies several factors that sentencing courts must consider when imposing a fine.

(d) In determining the amount of the fine, the court *shall* consider:

(1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) *the ability of the defendant to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;*

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

(e) The amount of the fine should always be sufficient to ensure that the fine, taken *together with other sanctions* imposed, is punitive.

Guidelines § 5E1.2(d), (e) (emphasis added).

The language of this section is mandatory: "The court *shall* consider [the following factors]." Therefore, the sentencing court must make specific findings on the record that demonstrate these factors were considered before a fine may be imposed. *See United States v. Seminole*, 882 F.2d 441, 443 (9th Cir.1989) (fine imposed without considering defendant's earning capacity violated the guidelines).

The presentence report noted that Walker owned assets valued at $21,000. It also noted that Walker had turned over to the government his van and the Mercedes, and that a bank repossessed his Cadillac. Other than a temporary job in 1981, and painting houses occasionally, Walker has not had any employment. He has a high school education, having completed his GED while imprisoned. Finally, the presentence report noted "it appears the defendant is unable to pay a fine." Yet the record in the district court does not indicate that any of this information was considered when assessing a $2 million fine. *See Seminole*, 882 F.2d at 443.

■ We recognize the district court also is controlled by the guidelines directing that the sentence imposed should punish and deter. *See* § 5E1.2(d)(1), (e). The district court apparently relied on these factors since it referred to Walker's "open and defiant" manner of violating the law, and the need for a substantial penalty to address his "reprehensible conduct." We agree that the defendant's conduct was serious, and at times, a flagrant abuse of the law. This conduct does not, however, allow the district court to assess a fine based on that conduct to the exclusion of other relevant considerations. When imposing any fine, the district court must consider the defendant's ability to pay, in light of his earning capacity, and the burden the fine places on the defendant.[5]

Walker's ability to pay a $2 million fine is questionable. First, he will be confined for twenty years, with little possibility of earning more than a small fraction of the fine. Second, the assets he currently owns, if applied against the fine, would reduce the fine by less than ten percent. Third, once

---

5. In *United States v. Perez*, 871 F.2d 45 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989), the court stated "The defendant has the burden of establishing that he is not able and even with the use of a reasonable installment schedule is not likely to become able to pay all or part of the fine." *Id.* at 48. We disagree with the Sixth Circuit to the extent that it holds that the defendant bears this burden with respect to a fine that is within the statutory or guidelines limit. Guidelines § 5E1.2(f) allows the court to *impose a lesser*

*fine or waive the fine* where the defendant establishes inability to pay even with a reasonable installment schedule or undue burden on a defendant's dependents as a result of the fine. This burden of proof is imposed only where the defendant requests a fine that is lower than the minimum fine mandated by the guidelines or the applicable statute. The district court must still consider the defendant's ability to pay where the fine is within those limits even though the defendant does not establish inability to pay under an installment plan.

he is released from prison, there is no evidence that Walker, who has a high school education and little job experience, has the earning capacity to pay off more than an insignificant amount of this substantial fine.

There is no evidence of assets exceeding the $21,000 reported in the presentencing report that might justify a conclusion that Walker has the ability to pay a $2 million fine. *Cf. United States v. Allen*, 886 F.2d 143, 146 (8th Cir.1989) (amount of fine justified where defendant reported a negative net worth since there was evidence that defendant had concealed other assets); *United States v. Roberts*, 881 F.2d 95, 103 (4th Cir.1989) (amount of fine upheld where district court found defendant had failed to disclose assets). The government argues that the district court was cognizant of the substantial wealth Walker enjoyed as a significant drug dealer, and that his ability to pay can be inferred from his expensive habits during his life of crime.[6] However, the government acknowledges that it has seized several of Walker's assets, including the Mercedes, the van, and $57,000 cash. While we do not believe that loss of assets obtained through illegal activity insulates a defendant from a severe financial penalty, it is an incorrect application of the guidelines to impose a fine that a defendant has little chance of paying. *Cf. United States v. Mitchell*, 893 F.2d 935, 936 (8th Cir.1990) (failure to make an informed decision on a defendant's ability to pay restitution an abuse of discretion where guidelines directed consideration of that factor).

The judgment of conviction is affirmed; we vacate the fine and remand this case for reconsideration of imposition of the fine.

---

**6.** At the sentencing hearing, the district court stated the probation report indicated Walker, or others on his behalf, had access to funds to pay the fine. However, nothing in the record we have reviewed demonstrates more than $21,000 in assets available to Walker.