**UNITED STATES of America, Appellee,**

v.

**Wayne T. DRINKWINE, Defendant–Appellant.**

**No. 711, Docket 97–1194.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 14, 1997.

Decided Jan. 8, 1998.

Rose M. Gill, Assistant U.S. Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Ira M. Feinberg, Assistant U.S. Attorney, New York City, of counsel), for Appellee.

Lloyd Epstein, New York City (Epstein & Weil, New York City, of counsel), for Defendant–Appellant.

Before: VAN GRAAFEILAND, CARDAMONE and McLAUGHLIN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Wayne T. Drinkwine appeals from the portion of the judgment of the United States District Court for the Southern District of New York that imposed upon him a fine of $50,000. For the reasons that follow, we vacate that portion of the judgment and remand it to the district court for further consideration.

From 1983 through 1995, Drinkwine administered the retirement and pension plans of several school districts in New York and Connecticut. Until 1990, Drinkwine performed these duties as an employee of various financial services companies. In 1989, he began to do so as a co-owner and officer of Mutual Financial Services, Incorporated ("MFSI"). Beginning in 1990, Drinkwine induced six retired teachers to transfer funds from their retirement savings plans to him so that he might invest these funds on their behalf. In convincing the teachers to do so, Drinkwine made numerous false representations as to how he planned to invest their money. In fact, Drinkwine converted to his own use over $524,000 of the money that he received.

Drinkwine's activities eventually became the subject of an investigation by the Securities and Exchange Commission and, in January 1996, the SEC sued Drinkwine charging him with violations of federal securities laws. During the SEC's subsequent deposition of Drinkwine, he testified falsely concerning his disposition of the funds given him by the six teachers.

On September 3, 1996, Drinkwine was indicted on twenty counts of mail fraud, in violation of 18 U.S.C. § 1341, and two counts of perjury, in violation of 18 U.S.C. § 1621. On November 4, 1996, he pled guilty pursuant to a written plea agreement to each of the 22 counts.

In 1994, when Drinkwine's colleagues became aware of his misdeeds, they terminated his association with MFSI. In 1993, Drinkwine's gross income was $90,485. In 1994, his gross income was $84,615. In 1995, it was $1,339. At Drinkwine's initial court appearance below, he was found to be indigent, and he has been represented since then by assigned counsel.

Although Drinkwine's present indigency is unquestioned, there is a possibility, or, as the prosecutor described it, a "hope," that some funds might become available in the future as a result of existing litigation. After Drinkwine and his associates at MFSI parted company, he brought a civil action to recover the value of his alleged interest in MFSI. He assigned the proceeds of that suit to the attorney representing him in the litigation, who was to apply them towards repayment of the victims of Drinkwine's defalcations. Drinkwine estimated possible recovery at somewhere between $350,000 and $500,000. However, at the present time there is no assurance that any amount will become available for restitution.

In the Probation Department's pre-sentence report, it assessed the potential range of punishments for which Drinkwine was liable and made the customary sentencing recommendations to the district court. Of particular relevance to the matter presently before us, the Department recommended that the court impose a fine of $6,000, the minimum permitted under the pertinent guidelines, to be paid pursuant to an installment schedule of 15 percent of Drinkwine's net salary while employed.

On March 21, 1997, the district court sentenced Drinkwine to 37 months' imprisonment and three years of supervised release. In addition, the court ordered Drinkwine to pay restitution in the amount of $524,449.32 minus any relief received by the victims through Drinkwine's pending civil litigation, and thereafter to pay a fine of $50,000 pursuant to an installment schedule of 25 percent of Drinkwine's future income. Drinkwine appeals only the district court's imposition of the fine.

## Discussion

■ Section 5E1.2 of the Federal Sentencing Guidelines sets forth the authority of a district court to impose a fine upon a criminal defendant. Two provisions in effect at the time of Drinkwine's sentencing are of particular relevance to his present appeal. First, subsection (a) states that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (1996). Second, subsection (f) states that

[i]f the defendant establishes that (1) he is not able to and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine.

U.S.S.G. § 5E1.2(f) (1996).[1]

We have interpreted § 5E1.2 to require that district courts exercise their discretion in favor of the waiver of a fine where indigence is properly shown. *See United States v. Wong,* 40 F.3d 1347, 1383 (2d Cir.1994). Specifically, we have stated that "[i]f the defendant is indigent, a fine should not be imposed absent evidence in the record that he will have the earning capacity to pay the fine after release from prison." *United States v. Rivera,* 971 F.2d 876, 895 (2d. Cir. 1992) (citing *United States v. Seminole,* 882 F.2d 441, 443 (9th Cir.1989)); *see also United States v. Walker,* 900 F.2d 1201, 1207 (8th Cir.1990) ("[I]t is an incorrect application of the guidelines to impose a fine that a defendant has little chance of paying.").

■ When a defendant is directed to pay both restitution and a fine, the burden imposed by the fine should not be measured by the fine standing alone. For example, a fine that might be deemed reasonable if considered in isolation could be very onerous if its payment were to follow the making of substantial restitution. For that reason § 5E1.2(d)(4) provides that in determining the amount of a fine, the court should consider "any restitution or reparation that the defendant has made or is obligated to make."

1. This subsection has since been recodified as § 5E1.2(e), though the language of the provision has not been changed. *See* U.S.S.G. § 5E1.2(e) (1997).

In the instant case, the district court directed the defendant to make restitution in the full amount of $524,449.32 but then stated that this should be a "net amount." The court continued: "If any of that amount has been paid to the victims or recovered through the litigation that's ongoing now, then Mr. Drinkwine's restitution obligation should be similarly reduced." We thus have no way of knowing whether, in imposing the $50,000 fine, the district court assumed that Drinkwine would have to pay the full amount or the "net amount" of the restitution. Moreover, if the district court opted for the latter alternative, neither that court nor this Court could say with any degree of certainty what the net amount would be.

Even if the foregoing uncertainty is resolved favorably to Drinkwine, we find no evidence in the record that he will have the capacity to pay a fine of $50,000. The district court suggested at sentencing that Drinkwine's "youth" and "talents" would enable him to become a success again in the future. It is not clear what period of time the district court envisioned by that unrestricted word "future." When the district court became somewhat more specific in its reference to the "future," it expressed its belief that Drinkwine "will be able to earn and has the potential to earn substantial sums of money upon his release from prison." This belief has little or no support in the record.

Drinkwine is a high school drop-out. He has relinquished his insurance license and essentially is banned from further employment in the securities field. He does not possess the skills or vocational training that would enable him to readily secure gainful employment upon his release from prison. During the period between Drinkwine's separation from MFSI and his incarceration he worked for a construction company which paid him $400 a month plus rent-free living quarters. This is hardly the kind of income out of which $50,000 fines are paid.

In January 1996, Drinkwine's wife divorced him and was given custody of their six-year-old son. Because of Drinkwine's meager income he was directed to pay only $25 a month towards the child's upkeep. Section 5E1.2(d)(3) provides that in determining the amount of the fine the court also should consider "the burden that the fine places on the defendant and his dependents relative to alternative punishments." The district court stated that it was aware of "the needs of [Drinkwine's] dependents and the fact that he has in the past made very minimal payments towards child support." There is no evidence in the record concerning the "needs" of Drinkwine's son unless one assumes that the "very minimal" $25 a month that the indigent Drinkwine paid satisfied those needs. Although the making of such an assumption might satisfy a district court's obligation to consider the then-existing burden placed upon a defendant's dependents, it has little if any relevance to future burdens. A district court need not make explicit findings with respect to such burdens. *See United States v. Sellers*, 42 F.3d 116, 120 (2d Cir.1994). It should, however, show that it considered them.

In sum, our review of the sentencing proceedings, including the pre-sentence report, does not satisfy us that the district court sufficiently followed the dictates of § 5E1.2 and the prior teachings of this Court to justify its imposition of the $50,000 fine. For this reason, we vacate the portion of the judgment that imposes the fine and remand that portion to the district court for further consideration.