# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3794

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa |
| Alejandro Cruz-Padilla, also known | * | |
| as Roberto Barriga Tinoco, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  March 15, 2000

Filed:  September 8, 2000

_____

Before McMILLIAN, FLOYD R. GIBSON,[1] and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

McMILLIAN, Circuit Judge.

A jury convicted Alejandro Cruz-Padilla of three counts of possession with intent to distribute and conspiracy to distribute methamphetamine in violation of 21 U.S.C.

_____

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.  The opinion is consistent with Judge Gibson's vote at conference.

§§ 841(a)(1), 841(b)(1)(A)(viii), and 846. Following the verdict, the district court[2] entered an order granting a new trial on the basis of improper prosecutorial statements made during closing arguments. The government appeals, arguing that the district court lacked jurisdiction to grant a new trial, because Cruz-Padilla's motion was untimely filed pursuant to Fed. R. Crim. P. 33. Alternatively, the government argues that the district court abused its discretion in granting a new trial. For the reasons discussed below, we affirm the judgment of the district court.

## I.

Cruz-Padilla was charged in a three-count indictment for drug-related offenses. A five-day trial followed. At trial, Cruz-Padilla made two motions for mistrial.[3] Cruz-Padilla's second motion for mistrial, made upon completion of the government's closing argument, characterized certain of the government's statements during closing arguments as improper and prejudicial. Cruz-Padilla argued that government counsel "on three different occasions made a statement to the jury concerning his own personal belief of the defendant's guilt rather than make a statement what the evidence would show to be his guilt." Side Bar & Closing Arguments Tr. at 2-3.

On December 21, 1998, the jury convicted Cruz-Padilla. Two days later, on December 23, 1998, the district court held a hearing on both of Cruz-Padilla's motions for mistrial. At the hearing, in support of his second mistrial motion, Cruz-Padilla

---

[2]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

[3]The first mistrial motion concerned a purportedly misleading representation of the substance of a certain government witness's predicted testimony and is not before this Court.

introduced a transcript of the relevant portions of the government's closing statements.[4] During his argument regarding the government's improper statements of personal belief, Cruz-Padilla raised another, rather imprecise, objection to the government's reference during closing arguments to Cruz-Padilla's status as an "illegal alien." Specifically, Cruz-Padilla argued that:

> [I]n the Cannon case, another Eighth Circuit case which is - - it may be closer on the facts than really the text in my motion for mistrial goes, and that is in that case there was some reference to people of African descent as being bad people and not being locals and things of this nature.
>
> Although I couldn't tell you exactly when, I think there were some mention during this trial of - - by the United States attorney of methamphetamine and Hispanic individuals and also I think maybe some mention of illegal aliens being prone to tell lies because their entire existence in this country is a lie and they're used to lying and that that's why they shouldn't be believed, and I think that really comes closer to the facts as outlined in the Cannon case . . . .

---

[4]The transcript received by the district court contained the following:

> He has been lying to you, and he's been lying to the officers about his involvement in this case. And the truth, <u>I believe</u>, is in the evidence and is there for all of you to see. <u>I feel</u> somewhat redundant continuing to talk about the evidence. <u>I believe</u> that the evidence in this case is overwhelming, and I want you to rely totally on the evidence and not on my statements, but <u>we believe</u> that the evidence is overwhelming in favor of a guilty verdict in this case. <u>We believe</u> that the evidence shows that he's guilty on all counts, and as such, we would ask you to return that after your deliberations. Thank you.

Sept. 17, 1999, Order, at 4 (emphasis added).

And what we've got here is I think worse than that because we've got a person who's not a citizen and, in fact, is an illegal alien. So although not mentioned earlier when I read that case, I thought that might also be applicable.[5]

Dec. 23, 1998, Motion Hr'g. Tr. at 9-10.

Cruz-Padilla concluded his argument by stating that "the characterization of [the prosecutor] of illegal aliens living a lie and being prone to lie and how lying comes easy to them and his evidence concerning his personal beliefs, especially under the Cannon and the Freisinger case, would compel this Court to declare a mistrial based on misconduct and ask that this matter be assigned for trial." Id. at 10-11.

In a May 28, 1999, Order, the district court denied Cruz-Padilla's motions for mistrial. The district court did not address Cruz-Padilla's additional claim concerning the prosecutor's "illegal alien" references. Because the district court relied solely on the transcript excerpt provided to it by Cruz-Padilla, the district court did not consider the portions of the transcript containing these references. Additionally, the district court, for reasons that remain unclear, did not have the December 23, 1998, motion hearing transcript and therefore possessed no written record of Cruz-Padilla's third "illegal alien" ground for mistrial.

On June 17, 1999, Cruz-Padilla submitted the first written motion, captioned as a motion for new trial, squarely addressing the "illegal alien" argument, which had been introduced orally at the December 23, 1998, motion hearing. In a September 17, 1999, order, the district court granted the motion for a new trial on the merits. This appeal by the government followed.

---

[5]Although, as mentioned, Cruz-Padilla provided the district court with the short transcript set out in note 3 above, he failed to supply any additional transcript to support this subsequent "illegal alien" argument.

-4-

## II.

## A.

The government first argues that the district court lacked jurisdiction to grant a new trial because Cruz-Padilla failed to file his motion for a new trial within seven days after the guilty verdict.   See Fed. R. Crim. P. 33; United States v. Spector, 888 F.2d 583, 584 (8th Cir. 1989) (holding that a court lacks jurisdiction to consider an untimely motion for a new trial).  Rule 33 of the Federal Rules of Criminal Procedure provides, in pertinent part, that

> [o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require . . . .  A motion for a new trial based on any other grounds may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

Therefore, in the present case, the district court had jurisdiction to grant a motion for new trial only within seven days of the December 21, 1998, guilty verdict or within any extension of time it granted prior to expiration of that seven-day period.

Cruz-Padilla filed his written motion for a new trial on June 17, 1999, well after Rule 33's seven-day mandate.  Cruz-Padilla does not suggest that his untimely filing was cured through extension, nor could he.  Rather, he claims that the written motion for new trial merely renewed his December 23, 1998, oral motion on the same grounds, upon which the district court neglected to rule.  The government argues that Cruz-Padilla's December 23, 1998, oral argument, regarding its "illegal alien" references, was insufficient to constitute a motion for new trial or satisfy Rule 33.  We disagree.

Where a reasonable construction of the facts can be made, "so as to allow the defendants sufficient time for filing to avoid a jurisdictional time bar, this court should make such a construction. The rights of the parties should not turn on a technical misunderstanding." United States v. Johnson, 982 F.2d 1192, 1198 (8th Cir. 1992). In the present case, both Cruz-Padilla and the government appeared to construe the December 23 argument as a third motion.[6] It seems, therefore, that the "technical misunderstanding" in this case was on the part of the district court.[7]

The "illegal alien" issue was presented to the district court as an oral argument within two days following the verdict, and Cruz-Padilla had reason to believe it would be addressed by the district court. Based on this assumption, Cruz-Padilla would have had no reason to file a written new trial motion raising this issue until he became aware of the district court's failure to rule upon it. While we recognize the strict construction generally given to Rule 33's jurisdictional time limit, we are of the opinion that, in this case, rigidity would serve merely to subordinate Cruz-Padilla's right to a fair trial, while

---

[6]During the December 23 motion hearing, government counsel stated "[f]inally, Your Honor, it appears Mr. Cosgrove's raised another grounds for mistrial regarding comments about the defendant's status as an illegal alien." The government proceeded to present responsive arguments regarding the merits of the purported motion. See Dec. 23, 1998, Motion Hr'g. Tr. at 16.

[7]In its September 17, 1999, order, the district court stated that:

> [t]hrough no fault of Cruz-Padilla's, the mistrial motions were not ruled on until May, and the 'illegal alien' issue . . . was not considered in arriving at the ruling because no transcript of that portion of the December hearing was available and the Court erroneously believed that the partial transcript defense counsel had provided to the Court was all that the defense was relying on.

Sept. 17, 1999, Order at 9.

effecting no meaningful rule-based purpose. The unforeseen and wholly inadvertent confluence of events in this case created a "technical misunderstanding" that warrants just the sort of liberal construction prescribed in Johnson. Accordingly, we hold that the district court properly exercised jurisdiction over Cruz-Padilla's June 17, 1999, new trial motion.

**B.**

We turn now to the merits of Cruz-Padilla's motion for new trial. In granting Cruz-Padilla's motion, the district court determined that the prosecution's remarks during closing arguments made improper and prejudicial appeal to Cruz-Padilla's status as an illegal alien. "We afford the district court broad discretion in controlling closing arguments, overturning the lower court only when it clearly abuses its discretion." United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996); see also United States v. Nelson, 988 F.2d 798, 807 (8th Cir.), cert. denied, 510 U.S. 914 (1993). In order to justify a new trial on this basis, the argument must be both improper and prejudicial to a substantial right of the defendant. See Nelson, 988 F.2d at 807.

Cruz-Padilla's motion for new trial objected to the following portion of the prosecution's closing arguments:

> In focusing on the defendant's involvement, I elected to try to concentrate primarily on what I believe are character issues involved here which basically boils down to whether or not the defendant, himself, is lying to you and is deceiving not only you but the police in this case. If he is, in fact, lying and deceiving, then the circumstantial evidence in this case as well as the direct evidence would point to his guilt beyond a reasonable doubt.
>
> Why should you believe or not believe the defendant, Mr. Cruz-Padilla? Well, first of all, the government contends that the reason you should not believe Mr. Cruz-Padilla is the fact that basically from the

outset Mr. Cruz-Padilla had been living a lie ever since he came to this country.

He is here under fraudulent and illegal circumstances, and as such, he is basically from day to day living a lie. So lying and deceiving to Mr. Cruz-Padilla is not something that is hard to do or out of the ordinary. You might rationalize that and say, Well, he just wants to be here to earn good money and make a good living for himself and his family. And I would agree that that is a rationalization for his being here. But the fact that he's here illegally and is basically living a lie from day to day makes it easier for him on a day-to-day basis to continue to lie. And living a lie on a day-to-day basically, facing people on a day-to-day basis as different individuals under different identities gives him the capacity to continue to lie with basically a straight face.

It becomes a way of life when you're living under the circumstances that he lives in. We may be sympathetic with that, but that is still a fact of life, that lying and deceiving to Mr. Cruz-Padilla is, in fact, a way of life.

See Closing Arguments of Government Counsel Tr. at 5-6.

In its closing, the defense responded, in part, by stating that "I don't think that all illegal immigrants in this country should be immediately branded as criminals and dope dealers as apparently the government thinks." Side Bar & Closing Argument Tr. at 4. During rebuttal, the government countered:

First of all, the government does not believe that every illegal alien in the United States is dealing drugs. They have not made that claim. We want to be the first to disavow any such state of mind on the part of the government or government employees. That is not the case.

Now, I thought I was very careful in explaining to you why I brought that out, and that is that once you start living a lie as illegal aliens do or are forced to do, it is easier to lie when you get into trouble the next time.

Id. at 18-19.

A prosecutor "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, 295 U.S. 78, 88 (1935). "The Constitution prohibits racially biased prosecutorial arguments." McCleskey v. Kemp, 481 U.S. 279, 309 n.30 (1987); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The government insists that its argument, although concededly related to Cruz-Padilla's ethnicity, merely drew a permissible inference between Cruz-Padilla's ability to lie and his use of a false identity. We disagree. The government crossed the line of propriety, in this case, when the emphasis of its argument shifted from evidence to emotion. As the district court aptly determined, the government's statements "repeatedly focus on the fact that Cruz-Padilla is not from 'here' and went far beyond arguing that Cruz-Padilla should not be trusted because he uses a false identity." Sept. 17, 1999, Order at 13. The government's repeated references to Cruz-Padilla's status reinforced to the jury his foreign origin and contributed nothing of a legitimate evidentiary value. As such, we have no trouble concluding that the remarks were improper.

Having found impropriety in the government's remarks, we move to the question of prejudice. Our task is to determine the probable effect the improper remarks had on the jury; "whether, in the context of the entire trial, the remarks prejudicially affected [Cruz-Padilla's] substantial rights, so as to deprive [him] of a fair trial." Cannon, 88 F.3d at 1502 (internal quotations ommitted).[8] In assessing whether the accused was

---

[8]Cruz-Padilla failed to object to the prosecution's improper remarks at trial, normally necessitating a plain error review. However, as the Eighth Circuit has noted previously,

> because improper closing remarks are reversible only if they are
> so prejudicial as to deprive the defendant of a fair trial, there is no

actually prejudiced by improper argument, we consider the presence of curative instructions, the strength of the government's case, and the cumulative effect of the misconduct.  See id.

First, careful review of the record reveals that the evidence against Cruz-Padilla, though considerable, was hardly overwhelming.  The primary issue at trial concerned establishing whether Cruz-Padilla was connected to the drugs recovered from a van in which he was riding.  Cruz-Padilla claimed complete ignorance of the presence of the drugs. Evidence supported this claim.  The drugs were discovered in a sealed container at the rear of the van.  As such, the government's case against Cruz-Padilla relied largely on testimony from purported co-conspirators of questionable credibility. The government's primary witnesses implicating Cruz-Padilla in the drug conspiracy were convicted felons, one of whom sought a reduction in an earlier ten-year sentence in exchange for his full cooperation in this case.  Additionally, the substance of certain testimony ultimately elicited at trial diverged materially, with respect to Cruz-Padilla's involvement in the conspiracy, from testimony provided earlier to the grand jury. Consequently, we cannot say that the evidence of guilt in this case was so overwhelming as to render the government's improper remarks harmless.

In Cannon, this court found the following statements improper and prejudicial: "There are bad people in the world, ladies and gentlemen.  We are lucky where we live not to come in contact with as many as there may be in other parts of the country.  But

difference between improper remarks which require reversal where an objection to the remarks has been preserved and remarks which constitute plain error.  If a prosecutor's remarks are so prejudicial that they deny the defendant a fair trial, then those remarks must, ipso facto, affect a substantial right of the defendant to a fair trial.

United States v. Freisinger, 937 F.2d 383, 387 (8th Cir. 1991).

-10-

there are still some around here." Id. The tenor and implication of the statements at issue in this case are highly similar. However, comparatively, the prejudice in this case is more patent, because, unlike the singular improper reference at issue in Cannon, the government's improper references permeated the entire closing argument. As such, we similarly hold that these pervasive references to Cruz-Padilla's status "gave the jury an improper and convenient hook on which to hang their guilty verdict . . . by calling attention to the fact that [Cruz-Padilla was] not local." Id. at 1503.

Moreover, as noted earlier in this opinion, Cruz-Padilla failed to object at trial to the government's improper arguments. Consequently, the district court issued no curative instructions to mitigate the resultant harm. We therefore agree that Cruz-Padilla is entitled to a new trial. Accordingly, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-