# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1999

———————

United States of America,

        Plaintiff - Appellee,

v.

Patient Transfer Service, Inc.,

        Defendant - Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Eastern
\*  District of Arkansas.
\*
\*
\*

———————

Submitted: September 25, 2006
Filed: October 11, 2006

———————

Before MURPHY, HANSEN, and RILEY, Circuit Judges.

———————

MURPHY, Circuit Judge.

After Patient Transfer Service, Inc. (PTS), an Arkansas corporation that provides ambulance transport services, was convicted of filing false Medicare and Medicaid claims and sentenced to a $1,177,786 fine, it appealed. We affirmed the conviction but remanded for resentencing. See United States v. Patient Transfer Serv., Inc., 413 F.3d 734 (8th Cir. 2005). On remand the district court[1] made additional findings and imposed a fine of $500,000. PTS appeals, and we affirm.

—————————————

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

At the original sentencing proceeding the district court set a base fine of $841,276 under U.S.S.G. § 8C2.4(a) and multiplied it by PTS's total culpability factor determined under § 8C2.5. The resulting fine range was $1,177,786 to $2,355,572, and the district court imposed a fine at the very bottom of the guideline range. It stayed payment of the fine and ordered PTS not to dispose of its assets in the meantime.

On the earlier appeal we found there was sufficient evidence to support the findings on which the district court relied in calculating the guideline range, but we vacated the sentence and remanded because the court had not made specific findings about PTS's ability to pay the amount of the fine. It was also unclear whether PTS had been found to be a criminal purpose organization under U.S.S.G. § 8C1.1 (fines should divest such a defendant of all its net assets).

At resentencing the district court expressly found PTS not to be a criminal purpose organization and then considered whether PTS had the ability to pay a fine within the guideline range. The court indicated that it intended to rely on the presentence report which had been prepared for the original sentencing and asked whether PTS had additional information to offer. PTS acknowledged that it bore the burden of persuading the court to depart beneath the guideline range, but asked the court to "impose as small a fine as possible" based on "the financial information compiled by the probation office." Although PTS remarked that the presentence report had been prepared "at [a] time when certain factors, which are now relevant, weren't taken into consideration," it offered no new evidence relating to its financial condition and did not request any revision of the original figures.

Based on the presentence report's financial data for PTS for the year 2002, the district court found the market value of the company's assets to be $2,369,724. It then deducted $871,357 in liabilities and applied discounts for depreciation and for the fact that any sale or liquidation would take place in "less than ideal market conditions." The court concluded that PTS had approximately $1 million in net assets and then

-2-

examined the company's reported cash flow for 2002 in order to estimate future annual income. After taking into account "write-down" depreciation and extraordinary legal expenses incurred as a result of the prosecution, it estimated that future operating expenses would be lower than those reported in 2002 and that the company's annual net income would be approximately $200,000. After making these findings, the district court imposed a fine of $500,000 to be paid in quarterly installments of $25,000 over a period of five years.

Just before concluding the resentencing and after advising PTS of its right to appeal, the court asked whether there was "anything else ... to resolve today," and defense counsel replied, "nothing further." PTS raised no objection at the hearing to the district court's findings about its finances or to the nature of the fine imposed and never suggested a specific fine amount. Furthermore, PTS does not now argue that the district court should not have relied on the facts contained in the presentence report.

On its new appeal PTS complains that the district court relied on "its own understanding of certain accounting principles" and used a questionable method of determining the company's ability to pay and that the company does not have the ability to pay a $500,000 fine. The government argues that the amount of the fine was reasonable.

A defendant's financial condition must be considered in determining the amount of a fine. 18 U.S.C. § 3572(a); see also U.S.S.G. § 8C3.3 (providing that the amount of a fine may be reduced if an organization is unable to pay a guideline range fine). A sentencing court must make specific factual findings on the record demonstrating that it has considered the defendant's ability to pay the fine. United States v. Walker, 900 F.2d 1201, 1206 (8th Cir. 1990).

Because PTS did not object at sentencing to the amount of the fine imposed, the manner in which the fine was calculated, or the court's factual findings, its sentence

is reviewed for plain error.  United States v. Johnson, 327 F.3d 758, 759 (8th Cir. 2003).  Plain error exists when (1) there is error (2) which is plain and (3) affects substantial rights, and we should only exercise our discretion to correct such error if it seriously affects the fairness, integrity or public reputation of judicial proceedings.  See United States v. Olano, 507 U.S. 725, 732-36 (1993).

The district court committed no plain error by relying on its own understanding of accounting principles.  PTS neither expressly states what it believes was wrong about the district court's method of calculation nor points to anything unusual about it.  It has also cited no case that supports its argument that the district court should be reversed because of its method of calculating the amount of fine PTS is able to pay.  The district court explained in detail both the manner in which it calculated defendant's assets, liabilities and future earning estimates, and the rationale behind those calculations.  This explanation was more than sufficient to satisfy the requirement that a district court make specific findings showing it has considered the defendant's ability to pay.  See United States v. Aguilera, 48 F.3d 327, 329 (8th Cir. 1995) ("detailed analysis" of defendant's finances not required).

PTS submitted no new evidence to supplement the original presentence report, and the district court carefully considered the financial information in that report in calculating the fine it imposed on remand.  PTS has shown no error in the district court's thorough consideration of PTS's ability to pay, and we find none.

We conclude that the significantly reduced fine imposed by the district court is reasonable and accordingly affirm its judgment.

_____