# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2091

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　Appellee,　　　　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Western District of Arkansas
Acambaro Mexican Restaurant, Inc.,　*
　　　　　　　　　　　　　　　　　*
　　　Appellant.　　　　　　　　　*

_____

Submitted: January 13, 2010
Filed: February 2, 2011

_____

Before SMITH, COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.

_____

KORNMANN, District Judge.

The defendant, a Subchapter S corporation, which owned and operated a number of Mexican restaurants, and two other closely-held corporations were indicted on one count of harboring aliens who were unlawfully residing in the United States, and who were ineligible for employment in the United States. Such activities were alleged to be in violation of 8 U.S.C. § 1324 (a)(1)(A)(iii) & (v)(II) and 8 U.S.C. §1324 (a)(1)(B)(i). The other two corporations are not parties to this appeal.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

Under 18 U.S.C. § 982, upon conviction of the offense charged in the indictment, the defendant was required to forfeit, to the United States, any property or proceeds used in committing the charged offense. The property subject to the forfeiture allegation included $149,932.46 of United States currency and eleven tracts of real estate, including the buildings and fixtures built thereon, all of which were owned by the defendant.

On August 7, 2008, the defendant plead guilty and agreed to the forfeiture of $400,000, consisting of the $149,932.46 in currency as alleged in the indictment as well as an additional $250,067.54 of currency in lieu of the tracts of real estate. Consequently, the defendant retained the buildings and assets that were subject to the indictment, which it used to operate its restaurants.

At sentencing, the district court[2] inquired as to the financial status of Arturo Reyes, Sr. ("Reyes"), the sole owner of Acambaro's stock, in determining whether it was readily ascertainable that the defendant could not pay a fine. Despite the court's inquiry, Reyes' personal income tax returns and other financial data were never made available or offered as exhibits during the sentencing.

The district court calculated Acambaro's guideline fine range to be $420,000 to $500,000. The defendant objected to the imposition of a fine, arguing it did not have the financial resources to pay a fine, especially in light of the $400,000 it spent on satisfying the forfeiture claim. The district court overruled Acambaro's objections and adopted the guideline fine range, although it imposed a fine substantially lower than the guideline range. Acambaro was sentenced to 5 years probation and fined $250,000.

---

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

Acambaro appeals its sentence, alleging the district court erred in imposing a fine, in the face of its insolvency. Acambaro also appeals the district court's use of the term "illegal alien" during the sentencing hearing.

We first review a sentence for significant procedural error and then for substantive reasonableness. United States v. Fischer, 551 F.3d 751, 754 (8th Cir. 2008). In reviewing a sentence for procedural errors, we review a district court's factual findings for clear error and its interpretation and application of the guidelines *de novo*. Id.

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). If the district court did not commit a significant procedural error, we review the sentence for substantive reasonableness under a "deferential abuse-of-discretion standard." Id. at 41.

## A. Piercing the Corporate Veil

Acambaro contends the district court committed error when it, in effect, "pierced the corporate veil" in considering Reyes' personal financial situation when deciding to impose a fine. We disagree. "It is a nearly universal rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock." K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 32, 280 S.W.3d 1, 15 (2008) (citing Anderson v. Stewart, 366 Ark. 203, 234 S.W.3d 295 (2006), and First Commercial Bank v. Walker, 333 Ark. 100, 969 S.W.2d 146 (1998)).

There is no question that the defendant is a corporate entity, separate and distinct from its sole shareholder, Reyes. On the other hand, all profits and losses in a Subchapter S corporation are passed through to shareholders in proportion to the percentage of stock owned by the shareholders. However, determining whether the corporate veil was pierced requires more than just recognizing the nexus between a corporation and its shareholders.

It is well-established that, "[t]he effect of piercing a corporate veil is to *hold the owner of the corporation liable*." U.S. v. Northeastern Pharmaceutical & Chemical Co., Inc., 810 F.2d 726, 744 (8th Cir. 1986) (emphasis added) (internal citations omitted). Thus, piercing the corporate veil requires, at a minimum, a court to hold the stockholders personally liable for the obligations of the corporation. Here, that never happened. The district court never attached personal liability to Reyes for Acambaro's obligation.

At sentencing, the district court simply inquired how it could conclude that it was readily ascertainable that Acambaro could not pay a fine when it had no information on Reyes' personal financial picture. Inquiring about Reyes' financial status without imposing any personal liability for Acambaro's obligations is not tantamount to piercing the corporate veil. Not only did the district court not wrongfully pierce the corporate veil, it did not pierce the corporate veil at all. We reject Acambaro's contention that its corporate veil was pierced.

B. *Imposition of a Fine*

Having decided that the district court did not pierce the corporate veil, we next determine whether the district court committed error in imposing a fine against the defendant. Acambaro only objected to its ability to pay a fine. When the district court announced its intention to impose a fine of $250,000, Acambaro advised the court that it did not object to the fine amount. Since Acambaro raised no objection to the form

of the sentence with the district court, any procedural sentencing errors are reviewed for plain error. *See* Fed.R.Crim.P. 52(b). We may reverse Acambaro's sentence only if the district court committed error "that is plain, . . . that affects substantial rights[, and that] . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings." U.S. v. Lewis, 593 F.3d 765, 772 (8th Cir. 2010) (quoting United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc)).

We have previously held that, "[a] defendant's financial condition must be considered in determining the amount of a fine." U.S. v. Patient Transfer Service, Inc., 465 F.3d 826, 827 (8th Cir. 2006). Moreover, "[a] sentencing court must make specific factual findings on the record demonstrating that it has considered the defendant's ability to pay the fine." Id. (citing United States v. Walker, 900 F.2d 1201, 1206 (8th Cir.1990)).

Guidelines §8C2.2(b) provides:

> Where it is readily ascertainable through a preliminary determination of the minimum of the guideline fine range (see §§ 8C2.3 through 8C2.7) that the organization cannot and is not likely to become able (even on an installment schedule) to pay such minimum guideline fine, a further determination of the guideline fine range is unnecessary. Instead, the court may use the preliminary determination and impose the fine that would result from the application of § 8C3.3 (Reduction of Fine Based on Inability to Pay).

§8C2.2(b) requires the court to engage in a two-part test to determine whether a corporate defendant should be relieved of its ability to pay at least the minimum of the guideline fine range. First, the court must determine that the organization cannot pay such a minimum guideline fine. Second, assuming the organization cannot pay the minimum guideline fine, the court must also determine that it is not likely that the

corporation will become able, even on an installment plan, to pay the minimum guideline fine. We address each of these components in turn.

The presentence report calculated the defendant as having a substantial negative net worth. The government failed to object to this factual determination. Consequently, the district court could have accepted this fact as true, which revealed that Acambaro was insolvent. Had the district court relied on the presentence report alone, it would have been apparent that Acambaro was insolvent and could not pay a fine.

However, the district court considered other factors in concluding that it was "not readily ascertainable" that the defendant could not pay a fine. The district court noted that the defendant was still operating at least four[3] restaurants and retained at least $400,000 of equity in the properties as to which the government originally asserted a forfeiture claim. Therefore, the district court committed no error in concluding that it was not "readily ascertainable" that Acambaro could not pay the minimum guideline fine.

With respect to the second requirement of §8C2.2(b), at sentencing, the district court said:

"But, you know, it certainly looks like from that, that they are having some problems as far as trying to get everything in a position where it can be paid in a timely manner, but at the same time, the corporation continues to operate, which suggests that they do have promise for the future. So I think that there's probably some kind of conditions that the Court could set to make sure that any fine that's imposed can be paid over time, if the Court's so inclined, and can be

_____

[3] At oral argument, counsel for Acambaro said only two restaurants were still in operation. Regardless of whether Acambaro was operating two restaurants or four restaurants, our analysis is the same.

paid in a manner that's consistent with not causing their business to go under in that regard."

Thus, even assuming, *arguendo*, that it was readily ascertainable that the defendant could not have paid a fine, the district court concluded that it was not likely that the defendant would not have become able to pay a fine. The district court allowed Acambaro to pay the fine in installments of at least $1,000 a month. At oral argument, counsel for Acambaro acknowledged that Acambaro has been able to make these monthly payments, which indicates that Acambaro has been able to pay a fine. The district court did not err in its application of §8C2.2(b).

The district court considered Acambaro's financial condition in fashioning an appropriate fine amount. The district court also made specific findings regarding Acambaro's ability to pay the fine. Therefore, we find no error, procedurally or substantively, in either the imposition of a fine or the amount of the fine imposed.

### C. The Use of the Term "Illegal Alien" at Sentencing

Finally, Acambaro contends that the district court committed reversible error by using the term "illegal alien" during the sentencing hearing. Acambaro claims that the use of this term violated its due process rights and the right to the appearance of fairness in a sentencing proceeding. To support its claim, Acambaro cites to United States v. Cruiz-Padilla, 227 F.3d 1064 (8th Cir. 2000). Acambaro's reliance on Cruiz-Padilla is misplaced. Cruiz-Padilla involved the use of the term "illegal alien" during closing arguments of a jury trial in which the argument was that, the defendant's status as an illegal alien made him more likely to commit crimes.

Here, however, the term "illegal alien" was never used in front of a jury; this case resulted in a conviction by plea. Moreover, the term "illegal alien" was used by the district court to describe the individuals working for the defendant, not the

defendant itself. Additionally, along with this term being used by the district court, the term "illegal alien" was also used in the indictment and it was used at least twelve times in the presentence report. Despite the numerous times the phrase "illegal alien" was used, the defendant never objected to the use of that term. Therefore, our review is for plain error. U.S. v. McGlothen, 556 F.3d 698, 702 (8th Cir. 2009).

The use of the term "illegal alien" was not error and in no way affected any of Acambaro's rights. The arguments regarding the use of the term "illegal aliens" are meritless.

For the foregoing reasons, we affirm the judgment of the district court.
_____